THE HONORABLE RICARDO S. MARTINEZ
HEARING DATE: SEPTEMBER 24, 2021
ORAL ARGUMENT REQUESTED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAS SUPPLY, INC., a Florida corporation,<br><br>               Plaintiff,<br><br>   v.<br><br>RADIANT CUSTOMS SERVICES, INC., a New York corporation, RADIANT GLOBAL LOGISTICS, INC., a Washington corporation,<br><br>               Defendants. | NO.  2:21-cv-01015-RSM<br><br>**PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**AND**<br><br>**COUNTERMOTION FOR SUMMARY JUDGMENT** |

## I.  RELIEF REQUESTED

Plaintiff JAS Supply, Inc. ("JAS Supply") submits its Opposition to Defendants Radiant Customs Services, Inc.'s ("Radiant Customs") and Radiant Global Logistics, Inc.'s ("Radiant Global") (collectively, "Radiant" or "Defendants")[1] FRCP 56 Motion for Summary Judgment which seeks to limit Defendants' liability regarding the customs brokerage services it provided to JAS Supply to no more than $200 pursuant to the subject limitation of liability provision in the Parties' underlying contract documents. *Motion for Summary Judgment*, Dkt. No. 14.  JAS Supply opposes Radiant's request, and further countermotions for summary judgment, seeking

---

[1] JAS Supply and the Radiant Defendants shall hereinafter be collectively referred to as the "Parties."

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 1

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

an order from this Court regarding the meaning and enforceability of that contractual limitation provision as it pertains to Defendants' liability owed to JAS Supply in this matter.

## II.   <u>INTRODUCTION</u>

In 2020, as the COVID-19 pandemic was rapidly spreading across the United States and the globe, JAS Supply saw the opportunity to use its vendor relationships to provide personal protective equipment ("PPE") to combat the spread virus and protect the public.  Specifically, JAS Supply sought to import containers of alcohol wipes to be used by the public as PPE. Having never worked with a customs broker or imported anything to the United States, JAS Supply turned to Radiant which held itself out as an expert in importation services.  JAS Supply trusted that Radiant would take the necessary steps to import the badly-needed alcohol wipes "quickly and efficiently"[2] and as promised.

Radiant failed to deliver on those promises.  Not only did it provide incorrect information to the U.S. Food & Drug Administration ("FDA"), it failed to correct its mistake for months on end, failed to notify JAS Supply of those mistakes, thereby preventing JAS Supply from initiating any action on its own behalf, and further failed to submit a timely appeal to the FDA which may have allowed JAS Supply to avoid or even mitigate the costs which it seeks in this lawsuit.  By the time JAS Supply was finally notified by the FDA of Radiant's errors and omissions, the only option was to either export or destroy the PPE; both options are still explored and resolved as between JAS Supply and the FDA.

Radiant's Motion is an undisguised attempt by Radiant to avoid taking responsibility for its failure to deliver on its promises.  It asks this Court to help it avoid any real consequences by enforcing an un-negotiated limitation of liability in a contract drafted solely by Radiant, subject to numerous factual exceptions to its enforceability, each of which is applicable under the

---

[2] On its website, Radiant states that it "ensures that your cargo moves quickly and efficiently through [Customs and Border Protection] & throughout the various customs clearance processes . . . "[o]ur specialty is the clearance of Time and Trade Sensitive Goods, and those of a perishable nature."  *See Complaint,* Dkt. No. 1 at ¶ 10; *Answer,* Dkt. No. 12 at ¶ 10.

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

circumstances of this case.  These exceptions will be discussed below, but in summary include procedural and substantive unconscionability and public policy.  Moreover, issues of genuine material fact remain regarding the role played by Radiant Global in the subject transactions, as well as alternative claims asserted in the event the contract is unenforceable as written, each of which are discussed below.

Unfortunately for Radiant, its premature FRCP 56 Motion sheds light on the unfavorable result of a plain reading enforcement of the subject limitation of liability provision where the express and unambiguous text of the provision at issue turns Radiant's requested relief on its head. Despite Radiant's attempt to argue the contrary, the limitation of liability provision precludes enforcing it against JAS Supply for the admitted *customs brokerage* services Radiant provided.  Specifically, the relevant provision states as follows: "In the absence of additional coverage under (c) above, [Radiant's] liability shall be limited to the following: (i) where the claim arises from activities *other than those relating to customs brokerage,* $50.00 per shipment or transaction."  So, while Radiant has sought dipositive motions practice prematurely, its decision to raise this issue with the Court when absolutely **zero discovery**[3] has been conducted points to a fundamental flaw in its argument and requested relief.

Accordingly, JAS Supply respectfully requests the Court (1) deny Radiant's Motion for Summary Judgment, and (2) grant JAS Supply's request for affirmative relief as a matter of law.

### III.   EVIDENCE RELIED UPON

JAS Supply relies upon the declarations of Meredith Thielbahr and Amber Starr, and the exhibits attached thereto, as well as the pleadings and materials already on file with the Court.

---

[3] Pursuant to this Court's Order Regarding Initial Disclosures and Joint Status Report (ECF No. 8), the Parties were to exchange Initial Disclosures no later than September 10, 2021.  JAS Supply timely made that exchange.  Consistent with its request to stay discovery pending ruling on the immediate Motion, but without agreement from counsel or order from the Court, Radiant failed to exchange any such initial disclosures.  And, obviously, no other written discovery or depositions have yet occurred.

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 3

**GORDON REES SCULLY**
**MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.   STATEMENT OF FACTS

### A.   The Parties: Introduction, the Power of Attorney, and Relevant Contract Documents.

The alcohol PPE containers at issue in this lawsuit are the first instance in which JAS Supply has done business with either Radiant Defendant.  *See* Declaration of Amber Starr ("*Starr Decl.*"), at ¶ 3.  It was also the first time JAS Supply had ever imported anything to the U.S. or worked with a customs brokerage.  *Id*.  JAS Supply and Radiant were connected through a mutual business contact, Amit Khubani.  *Id*.  Mr. Khubani was very familiar with the import and export business, and had worked with Radiant in the past.  *Id*.  On May 15, 2020, Mr. Khubani sent JAS Supply, via email, a four-page Power of Attorney ("POA") and credit application for JAS Supply to complete and sign to get JAS Supply "setup to import".  *Id*. at ¶ 4; Exhibits 1 (POA) & 2 (5/15/20202 email from A. Khubani, at decisionmaker@gmail.com with both attachments).  The POA was on Radiant Customs' letterhead, while the credit application referenced Radiant Global.  *Id*.  JAS Supply executed the 4-page POA that same day, May 15, 2020, and returned it to Radiant/Amit.  *Id*., at ¶ 5, Exhibit 3.  JAS Supply had no opportunity to, and did not, negotiate any portion of Radiant's POA or terms and conditions, including any purported limitation of liability.  *Id*.

The first paragraph, top of page 2 of 4 of the POA, reads as follows:

> In the execution of this document, it is expressly understood that grantee limits its liability to the extent provided for under law and in accordance with ***SBA's Terms and Conditions of Service, a written copy of which Grantor hereby acknowledges having received and to which Grantor agrees to be bound.*** Said Terms and Conditions of Service are also available online at: http://www.radiantgloballogistics.com

*Id.*, ¶ 4; Exhibit 1 (emphasis added).

The POA, however, does not reference or make clear what "SBA" means or may be referring to – there is no reference or defined "SBA" term elsewhere in the POA.  *Id*.  Radiant has never provided JAS Supply with a document purported to be "SBA's Terms and Conditions

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

of Services". *Id.* at ¶ 6.  Moreover, the SBA Terms and Conditions of Service are not published at the URL address provided on the face of the POA. *Id.*; *See also* Declaration of Meredith L. Thielbahr ("*Thielbahr Decl.*"), at ¶ 2.  The Terms and Conditions are not accessible in any of the menus at the top of the home page; nor are they retrieved by the website's own search engine for "terms" or "terms and conditions." *Id.*  Rather, the terms and conditions are nested within the website and can only be accessed by following a small link ("Terms") in the bottom-right corner at the end of the home page, followed by clicking through a subsequent page of aggregated contractual terms on a link for "Radiant Global Logistics." *Id.*  Notably, there is no option or link for "Radiant Customs Services." *Id.*  The actual URL address of the terms and conditions referenced above the signature line of the POA is https://resources.radiantdelivers.com/radiant-terms-conditions. *Thielbahr Decl.*, ¶ 3.  Importantly, this URL takes you to a webpage entitled, "Radiant Global Logistics Terms and Conditions." *Id.*

The last page of the POA (page 4 of 4) displays "GOVERNING TERMS & CONDITIONS OF SERVICE." *Starr Decl.*, at ¶ 4; Exhibit 1.  The page makes no reference to "SBA." *Id.*  The terms and conditions contains the following preamble (emphasis added):

> These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer".  In the event the Company renders services and issues a document containing Terms and Conditions governing such services, *the Terms and Conditions set forth in such other documents(s) shall govern those services*.

*Id.*

Again, Radiant never provided JAS Supply with any purported SBA "Terms and Conditions", nor any other "Terms and Conditions" pursuant to POA's preamble above. *Id.* at ¶ 6.

On May 19, 2020, JAS Supply participated in a call with Gina Milana, Radiant's International Operations Manager, to discuss JAS Supply's import goals and customs brokerage

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 5

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

needs, and additional information and documents necessary from JAS Supply to deliver and clear customs prior to any importation.  *Id*. at ¶ 7.  Thereafter, Radiant sent JAS Supply a customer onboard packet.  *Id*.; Exhibit 4.

**B.    The Limitation of Liability Provision in Radiant's POA.**

Radiant's POA terms and conditions contain limitation of liability provisions at Section 9 ("Disclaimers; Limitation of Liability") at page 4.  *Id*. ¶ 4; Exhibit 1.  In pertinent part, Section 9 provides as follows:

> (b)    Subject to (d) below, Customer agrees that in connection with any and all services performed by the Company[4], the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;
> ….
> (d)    In the absence of additional coverage under (c) above[5], the Company's liability shall be limited to the following:
>      (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction; or
>      (ii) where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less[.]

*Id.*

Section 1 of Radiant's terms and conditions includes various "Definitions."  *Id*.  "Customs business" is not defined in the POA.  *Id*.

The limitation of liability provision at Section 9 of Radiant's POA is identical to the limitation of liability provision in the terms and conditions set forth at Radiant Global's webpage: https://resources.radiantdelivers.com/radiant-terms-conditions.  *Thielbahr Decl*. at ¶ 3.

---

[4] Section 1 ("Definitions") of the POA defines "Company" to mean "Radiant Customs Service, Inc. as well as its subsidiaries, related companies, agents and/or representatives as may exist[.]"
[5] Again, no discovery, including any regarding applicable coverage of either Radiant entities, has been conducted.

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND COUNTERMOTION FOR SUMMARY JUDGMENT - 6

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

**C.      FDA Detention and Refusal of Entry & JAS Supply's Filing of this Lawsuit.**

Working with Radiant as its customs broker, JAS Supply, ultimately, imported 19 containers of PPE alcohol wipes, the last four (4) of which were detained by the FDA and are the subject of this lawsuit.  *Starr Decl*. at ¶ 8.  The containers were detained on September 24, 2020, due to Radiant's failures to identify the correct manufacturer of the wipes, and whether they were FDA-registered.  *Id*.  Radiant failed to timely notify JAS Supply of the entry issues and FDA's refusal to accept them.  *Id*.  The first JAS Supply was notified of an issue with entry was months later, on December 30, 2020, when the FDA issued a notice of refusal, thus requiring JAS to return the containers for destruction. Radiant appealed, but the FDA declined to rescind its refusal.  *Id*.

On July 29, 2021, after unsuccessful demand letters by JAS Supply to Radiant, Radiant filed the immediate lawsuit.  *Complaint*, Dkt. No. 1.  The day following the filing of its Answer (*see Answer*, Dkt. No. 12), the Radiant Defendants' filed the immediate Motion for Summary Judgment (Dkt. No. 14) and Motion to Stay Discovery (Dkt. No. 17).

No discovery has been conducted in this case.  *Thielbahr Decl.*, at ¶ 4.  JAS Supply exchanged FRCP 26(a)(1) Initial Disclosures on September 10, 2021.  *Id*.  Defendants made no such exchange.  *Id*.

## V.      ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION

**A.      Summary Judgment is Not Proper as Radiant's Motion Rests on Numerous Disputed Issues of Fact.**

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there does not exist any genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  CR 56(c).  A material fact, for summary judgment purposes, is one on which the outcome of the litigation depends, in whole or in part.  *Schmitt v. Langenour*, 162 Wn. App. 397, 404 (2011).  The moving party is held to a strict standard.  *Atherton Condo. Apartment-*

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND COUNTERMOTION FOR SUMMARY JUDGMENT - 7

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

1    *Owners Ass'n Bd. of Directors v. Blume Dev. Co*., 115 Wn.2d 506, 516 (1990).  Any doubts as

2    to the existence of a genuine issue of material fact is resolved against the moving party.  *Id*.  In

3    addition, we consider all the facts submitted and the reasonable inferences therefrom in the light

4    most favorable to the nonmoving party.  *Id*.

5          Here, Radiant has cited and relied upon Washington's general enforcement of limitation

6    of liability provisions.  Yet, conveniently, Radiant has failed to present relevant case law and

7    issues of disputed facts which, if proven true, would render the limitation provision of the

8    Parties' POA and contract documents unenforceable.  These exceptions include both procedural

9    and substantive unconscionability, and public policy.

**B.    Issues of Material Fact Regarding Unconscionability and Public Policy Considerations Preclude Summary Judgment on Radiant's Purported Limitation of Liability Provision.**

12         Radiant gives but a single paragraph of airtime to the general rule in Washington that

13   "liability limitations will be enforce[d] if they are not unconscionable."  *See* Motion, Dkt. No.

14   14, at p. 7 (*citing M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 585, 998

15   P.2d 305 (2000)).[6]  Radiant, however, omits for this Court's consideration well-known

16   exceptions to the enforceability of limitation provisions, including unconscionability and public

17   policy.

18         Under Washington law, contracts are generally enforceable as long as they are not

19   unconscionable and do not violate public policy.  *See Nelson v. McGoldrick*, 127 Wn.2d 124,

20   131 (1995) (explaining contracts are enforceable so long as they are not unconscionable);

---

[6] Defendants', at FN 2 of their Motion, cite to an unpublished, non-controlling Texas case, *Atwood Oceanics, Inc. v. Zust Bachmeier of Switzerland, Inc.*, 2006 WL 734415 (S.D. Tex. March 21, 2006) arguing that a Texas court, there, "upheld a verbatim limitation on liability language in  customs brokerage contract."  The *Atwood* limitation of liability provision, however, as argued in JAS Supply's Countermotion below, is not identical. It simply limits liability "to an amount equal to the lesser of $50.00 per entry or shipment or the fee(s) charged for services" with no mention of the *types of services* included or excluded (at least not in the facts of the unpublished opinion).  Moreover, there are distinguishable facts regarding contract negotiation and the services provided in *Atwood* from the present case, all of which are relevant in determining the enforceability of a limitation clause.

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 8

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

*Wagenblast v. Odessa School Dist.*, 110 Wn.2d 845, 848-49 (1998) (holding exculpatory clauses in contract as valid as long as they do not violate public policy).  With respect to issues of unconscionability, Washington courts will deny the enforcement of all or part of an unfair contract based on abuses within the actual terms of the contract itself (substantive unconscionability) or abuses during the process of forming a contract (procedural unconscionability).  *See Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 458-59 (2002).  While the burden of proving unconscionability is on the party attacking the clause, the court's decision will be based on the factual circumstances surrounding the contract in question.  *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898 (2001).

Substantive unconsionability may be found in cases where a clause or term in the contract is one-sided or includes a gross disparity, thereby violating the reasonable expectations of the parties. 25 WASH. PRAC., CONTRACT LAW AND PRACTICE § 9:6 (3d ed.).  Washington law dictates that a contract term is substantively unconscionable where it is "shocking to the conscience," "one-sided or overly harsh," or "exceedingly calloused."  *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 603 (2013); *Adler v. Fred Lind Manor,* 153 Wn.2d 331, 344-45 (2004).

Procedural unconscionability is broadly about a "lack of a meaningful choice, considering all the circumstances surrounding the transaction." *See M.A. Mortenson Co.*, 140 Wn.2d at 587–89. Washington law recognizes several nonexclusive factors to consider in assessing the procedural unconscionability of a liability exclusionary clause:  "(1) the conspicuousness of the clause in the agreement; (2) the presence or absence of negotiations regarding the clause; (3) the custom and usage of the trade; and (4) any policy developed between the parties during the course of dealing." *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wn.2d 428, 441 (2002).

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 9

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

Courts have further articulated that unconscionability is determined in view of the pertinent facts, "including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Puget Sound Fin*, 146 Wn.2d at 441–42; *see also Cypress Ins. Co. v. SK Hynix Am., Inc.*, 365 F. Supp. 3d 1142, 1156 (W.D. Wash. 2019). Additionally, both the nature of the parties and the type of agreement – negotiated versus adhesion – matter significantly to procedural unconscionability.

And, finally, Washington law also voids contractual exculpatory clauses if they violate public policy. *See generally, Johnson v. NEW, Inc.,* 89 Wn. App. 309 (1997). In Washington, the analysis of whether a clause or disclaimer violates public policy consists of six factors, articulated by the court in *Wagenblast*. An agreement limiting one's own liability violates public policy if a court determines the majority of the following characteristics are present:

> (1) the transaction concerns a business of a type generally thought suitable for public regulation; (2) *the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public*; (3) the party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards; (4) as a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services; (5) in exercising a superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; (6) as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Wagenblast,* 110 Wn.2d at 851-52.

Here, numerous factors – all of which are relevant and factually disputed between the Parties – weigh in favor of the unenforceability of the POA's and Radiant Global's URL terms and conditions $50 limitation of liability provision. First, Radiant's limitation of liability provision blatantly and excessively favors Radiant and is one-sided; it attempts to cap Radiant's liability to $50 per entry where Radiant's invoice for the entry at issue alone was for

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 10

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

$144,471.44.  *Starr Decl*., at ¶ 9; Exhibit 5.  JAS Supply has factual arguments regarding the lack of meaningful choice it had in contract negotiation.  The terms of the POA and hidden URL terms and conditions are plainly an adhesion contract.  While JAS Supply and Radiant are both sophisticated parties under the eyes' of the law, there were no negotiations, application of what terms are applicable are not clear, and JAS Supply was never supplied with the supposed "SBA's Terms and Conditions."

Finally, as a matter of public policy, the limitation of liability should be deemed void and unenforceable.  The contract for customs brokerage services is clearly suitable for public regulation.  Radiant was performing an important health service to the public in a time of great need, and policy issues relating specifically to the COVID-19 pandemic may very-well ones of first impression for this Court.  Radiant and JAS Supply had never done business together prior to these 19 containers of PPE.  Radiant held itself out as a competent global and domestic customs broker.  JAS Supply's property came under the control and care of Radiant, and under a heightened agency fiduciary duty, and Radiant utterly failed in performing its contract as a result of its negligence and carelessness.

C.   **Radiant Global's Role in JAS Supply Transactions at Issue Preclude Dismissal as a Party.**

Radiant requests this Court dismiss Radiant Global as a party for two reasons: (1) Radiant Global did not enter into a contract with JAS Supply, and (2) "Radiant Global did not participate in any of the acts or omissions that Plaintiff alleges caused its damages."  *See, generally*, ECF No. 14, at pgs. 4-6.  However, even without the benefit of any discovery whatsoever, the evidence shows that Radiant Global was involved in the transactions at issue in this case, and issues of material fact remain regarding the extent to which Radiant Global may have been party to the contract.

First and primarily, the limitation of liability Terms and Conditions which Defendants' rely on to obtain summary judgment exist on Radiant *Global's* webpage/URL cite.  There is no

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 11

**GORDON REES SCULLY**
**MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

webpage terms and conditions for Radiant Customs.  Likewise, the credit application, a required contract document for Radiant to "setup JAS Supply to import", was on Radiant Global's letterhead – not Radiant Customs.  Second, Invoice Number 400108027, related to the final shipment of the four containers of alcohol wipes at issue, was received by JAS Supply via email on August 21, 2020.  *Starr Decl*. at ¶ 9; Exhibit 5.  The invoice required payment be remitted not to Radiant Customs, but to "Radiant Global Logistics."  *Id*.  JAS Supply paid the invoice as required via wire transfer.  *Id*.  Further, the Bill of Lading, provided as part of the invoice package, identifies "Radiant Global Logistics" as the "Forwarding Agent" for the transaction. *Id*.; Exhibit 5 at page 4.  In fact, each invoice from Radiant to JAS Supply contained exactly the same information – payment to Radiant Global and Radiant Global as the forwarding agent on the relevant bill of lading.  *Id*. ¶ 9.  Therefore, it is patently false to suggest Radiant Global "did not participate" in the transactions.

At this stage in this lawsuit, it cannot be said that Radiant Global is not a proper party to this lawsuit and its dismissal is wholly unsupported by the record before the Court.

**D.  Issues of Material Fact Regarding Contract Enforceability and Extra-Contractual Duties Preclude Summary Judgment Dismissal of JAS Supply's Fiduciary Duty Claims and Negligence Claims against Defendants.**

1.  Fiduciary Duty Analysis.

At its core, Radiant's argument to dismiss JAS Supply's breach of fiduciary duty claim rests on the mistaken idea that the mere existence of a contract precludes the claim.  Critically, Radiant never cites to a Washington case where a court has applied the independent duty doctrine to prohibit a breach of fiduciary duty claim.[7]  In fact, over the course of its five paragraph argument, Radiant conflates general claims for negligence and breach of fiduciary

---

[7] Radiant did cite to *Pac. Boring, Inc. v. Staheli Trenchless Consultants, Inc*., 138 F. Supp. 3d 1156 (W.D. Wash. 2015), an opinion written by this Court.  As the Court is undoubtedly aware, the holding in *Pac. Boring* was not that "Washington law does not impose a separate duty on professionals when the relationship between the parties is governed by contract" because there was no contract between the parties in that matter.  Instead, this Court rejected plaintiff's argument an engineer can be subject to liability for its affirmative conduct to third parties.

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

duties, fails to provide even the basic elements of the claim, and ultimately leaps to a conclusion unsupported by fact or law.

Washington law has long recognized that breach of a fiduciary duty imposes liability in tort. *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 433 (2002). Contrary to Radiant's faulty contention, a fiduciary duty can arise even when a contract exists between the parties. In *Micro Enhancement Int'l*, the parties executed a contract for auditing services ahead of a planned initial public offering of stock. *Id.* at 418. The trial court declined to instruct the jury on a breach of fiduciary duty claim, and the court of appeals upheld the decision, but not based upon the economic loss rule. Rather, the claim was disallowed because the jury found no proximal relationship between the conduct at issue and the claimed losses, and because the court determined that a public auditor, like the defendant in that case, is not a fiduciary of its client because, among other reasons, its primary duty is to the public. *Id.* at 434-35. In other words, a breach of fiduciary duty claim is colorable even with the existence of a contract that governs the relationship between the parties.

In *Blakey v. Blakey*, 186 Wn. App. 1037 (2015), an unpublished yet persuasive case, the court of appeals applied the independent duty doctrine and the holding in *Micro Enhancement Int'l* to permit a claim for breach of fiduciary duty. Specifically, the court stated <u>plaintiffs' breach of fiduciary duty claim has a firm basis in tort law and, as such, is not precluded under the independent duty doctrine</u>. *Id.* at 10. While the court ultimately found plaintiffs failed to prove they suffered damages as a result of the alleged breach, the inapplicability of the independent duty doctrine is relevant to JAS Supply's claims in this case.

Here, sufficient facts exist to establish every element of a claim for breach of fiduciary duty. In order to establish a claim, the plaintiff must prove (1) existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach proximately caused the

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 13

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

injury.  *Micro Enhancement Int'l.*, 110 Wn. App. at 433–34.  A fiduciary relationship can arise either in law or in fact.  *Liebergesell v. Evans,* 93 Wn.2d 881, 890 (1980).

A fiduciary relationship arises at law when the nature of the relationship between the parties is historically considered fiduciary in character – this explicitly includes the principal and agent relationship.  *Alexander v. Sanford*, 181 Wn. App. 135, 172–73 (2014).  On the other hand, a fiduciary relationship arises in fact when there is something in the particular circumstances which approximates a business agency or professional relationship, something which itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise.  *Id*. at 173.

In this case, Radiant's fiduciary duty arises not only pursuant to the contract between the Parties, but also at law <u>and</u> in fact.  At law, Radiant acted as JAS Supply's agent with respect to customs brokerage activities, and was empowered to act on its behalf in all dealings with CBP, the FDA, and others.  This relationship between the two entities was the classic principal/agent arrangement.  Radiant's fiduciary duty also arises in fact because JAS Supply justifiably relied upon Radiant's self-proclaimed expertise in navigating customs issues – something JAS Supply had never dealt with before.  JAS Supply's inexperience, combined with the complicated nature of customs brokerage, induced JAS Supply to believe Radiant was not only acting at all times in its best interest, but that Radiant was providing all necessary information related to the customs brokerage transactions.

Unfortunately, Radiant was not forthcoming with necessary information.  In Washington, among many other duties, an agent has a fiduciary duty to his principal to report information that he receives affecting his principal's interests.  *Soper v. Knaflich*, 26 Wn. App. 678, 681 (1980).  Radiant breached its fiduciary duty by failing to inform JAS Supply regarding the FDA's detention of the final shipment of alcohol wipes, failing to provide the requested and required information to the FDA, and failing timely appeal the FDA's decision.  JAS Supply

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 14

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

suffered damages in excess of $700,000, caused solely by Radiant's multiple breaches, when the FDA determined the subject product must be exported or destroyed.

Washington law is clear: a fiduciary relationship can arise regardless of the existence of a contract, and claims for breach are not prohibited by the independent duty doctrine. Based upon the above, genuine issues of material fact preclude summary judgment on JAS Supply's breach of fiduciary duty claim against Radiant.

2.     Negligence Analysis.

In Washington, pleadings are governed by CR 8, which states in relevant part:

A pleading which sets forth a claim for relief … shall contain (1) a short and plain statement of the claim showing the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled. Relief in the alternative or of several different types may be demanded.

CR 8(a). (Emphasis added). The Rule goes on to permit a party to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds or on both." CR 8(e)(2). (Emphasis added).

JAS Supply's claim for negligence against Radiant is primarily a function of the poorly drafted contract between the Parties that, as described above, is so riddled with errors, ambiguities, undefined terms, and inconsistencies, it may well be unenforceable. In the event the contract is determined to be void, in whole or in part, JAS Supply has the right and the obligation to assert all claims it may have against Radiant. Moreover, to the extent Radiant argues there is no contract between JAS Supply and Radiant Global, issues of genuine material fact remain regarding Radiant Global's role in the transactions at issue, and preclude dismissal of JAS Supply's negligence claim.

At this early stage in the litigation, prior to any discovery whatsoever, JAS Supply's claims in the alternative for negligence should not be dismissed as a matter of law. Issues of material fact remain regarding the enforceability of the contract Radiant alone drafted, and the

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND COUNTERMOTION FOR SUMMARY JUDGMENT - 15

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

Court should not reward Radiant at this initial phase of the case by dismissing an alternative claim supported by fact and law.

### VI.   JAS SUPPLY'S AFFIRMATIVE MOTION

JAS Supply respectfully moves this Court for an order ruling that the purported limitation of liability provision found in the POA and relevant contract documents cannot be said to limit Defendants' liability for the **customs brokerage** services the Parties' undisputed agree Defendants' provided as a matter of law.

#### A.   In Matters of Contract, Summary Judgment is Appropriate when the Contract Provision in Question is Unambiguous.

Summary judgment is appropriate if reasonable persons could reach but one conclusion. *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 492 (2005) (*citing Wilson v. Steinbach*, 98 Wn.2d 434, 437 (1982)). When interpreting a contract, the primary objective is to discern the parties' intent. *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674 (1996). "Unilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions." *Lynott v. Nat'l Union Fire Ins. Co.* 123 Wn.2d 678, 684 (1994). Extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent; yet, as a general rule, the parties' intentions are questions of fact. *Berg v. Hudesman*, 115 Wn.2d 657, 667 (1990); *Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App. 507, 517 (2004), *rev denied*, 153 Wn.2d 1027 (2005).

Clear and unambiguous contract terms, to the contrary, are questions of law. *Id*. A contract is not ambiguous simply because the parties suggest opposing meanings. *Martinez v. Miller Indus., Inc.*, 94 Wn. App. 935, 944 (1999). Here, the relevant limitation of liability provision which Radiant attempts to rely to limit is exposure expressly excludes claims arising from the provision of **customs brokerage** services. The language of that limitation is express, clear, and unambiguous. Accordingly, JAS Supply seeks a dipositive order form this Court

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND COUNTERMOTION FOR SUMMARY JUDGMENT - 16

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

ruling that any attempt by Radiant to limit its damages to JAS Supply as a result of the ***customs brokerage*** services it undisputedly provided – or failed to provide – and which give rise to the Parties' claims and defenses, is unenforceable and void.

    **B.**    **The Clear and Unambiguous Language of the Limitation of Liability Provision Expressly Precludes a Limitation of Liability for Customs Brokerage Services.**

    As outlined above, absolutely no discovery has been conducted in this matter. The Parties' only pleadings have been their Complaint and Answer, respectively, and Joint Status Report. *Combined Joint Status Report and Discovery Plan*, Dkt. No. 23. Regardless, the Parties, in their initial pleadings, make clear it is undisputed that JAS Supply's claims relate to Radiant's provision of ***customs brokerage*** services. JAS Supply's Complaint alleged, in relevant part, that JAS Supply contracted with Radiant "for Radiant to provide ***customs broker*** services to JAS Supply for the import of 19 containers of alcohol wipes …" *Complaint*, Dkt. No. 1, at ¶ 1. In Answer, Radiant admitted that "JAS Supply entered into a contract with Radiant[] to provide ***customs broker*** services to JAS Supply for the import of [the] 19 containers of alcohol wipes." *Answer*, Dkt. No. 12, at ¶ 1. Likewise, in their immediate Motion for Summary Judgment, Defendants assert that "Radiant Customs is a ***customs broker*** and ocean freight forwarder." *Motion*, Dkt. No. 14, at p. 2. Defendants go on to argue in their Motion that, "all of [JAS Supply's] claims relate to Radiant's [] performance of its ***custom brokerage*** duties, including, but not limited to, the acts necessary to facilitate the entry and clearing of the imports at issue." *Id.* at p. 7 (*citing* Vitale Decl., Ex. A). Construing all facts in favor of Radiant, it is without question that the services provided by Radiant to JAS Supply were customs brokerage services.

    Yet, the relevant limitation provision, which Defendants cite and rely upon in their Motion (at page 6, Paragraph C) expressly and unambiguously *excludes* the limitation of liability argued by Radiant for claims arising out of the provision of customs brokerage services, the

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 17

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

very services Defendants answer in the affirmative and later argue in the immediate Motion are what Radiant provided in this case.  That provision, found at paragraph 9(d)(i) of the POA, states as follows: "In the absence of additional coverage . . . [Radiant's] liability shall be limited to the following: (i) where the claim arises from activities *other than those relating to customs brokerage*, $50.00 per shipment or transaction."  *Starr Decl*. at ¶ 4; Exhibit 1.  Accordingly, as admitted by Radiant, Defendants' provision of customs brokerage services are explicitly exempt from any limitation of liability under the relied upon provision 9(d)(i).  The Court should rule, as a matter of law, that JAS Supply's claims related to Radiant's provision of customs brokerage services are not subject to any limitation of liability.

## VII.   CONCLUSION

Plaintiff JAS Supply respectfully requests that this Court deny Defendants' Motion for Summary Judgment, and further requests an affirmative order from this Court that the limitation of liability provision does not apply to the *customs brokerage* services all Parties admit Defendants' provided, and therefore cannot limit Defendants' liability to $200 (or another nominal amount) in this case as a matter of law.

## VIII.   PROPOSED ORDER

A Proposed Order is attached hereto.

Dated:   September 20, 2021

GORDON REES SCULLY MANSUKHANI, LLP

By:  */s/ Meredith Thielbahr*
Meredith Thielbahr WSBA # 41746
Collin Vincent WSBA #44277
Attorneys for Plaintiff JAS Supply, Inc.
Gordon Rees Scully Mansukhani, LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Phone: (206) 695-5100
Fax: (206) 689-2822
Email:  mthielbahr@grsm.com
           cvincent@grsm.com

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND COUNTERMOTION FOR
SUMMARY JUDGMENT - 18

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on this date, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the

4

following:

5

Aukjen Ingraham
6   Lillian K. Hubbard
Josh Dennis
7   1420 5th Avenue, Suite 3400
Seattle, WA 98101
8   aingraham@schwabe.com
lhubbard@schwabe.com
9   jdennis@schwabe.com
Attorneys for Radiant Custom Services, Inc.
10  and Radiant Global Logistics, Inc.

11

12                                                By:  */s/   Meredith Thielbahr*
Meredith Thielbahr
13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF JAS SUPPLY, INC.'S OPPOSITION                    **GORDON REES SCULLY**
TO DEFENDANTS' MOTION FOR SUMMARY                          **MANSUKHANI, LLP**
JUDGMENT AND COUNTERMOTION FOR                             701 5th Avenue, Suite 2100
SUMMARY JUDGMENT - 19                                      Seattle, WA  98104
                                                           Telephone: (206) 695-5100
                                                           Facsimile: (206) 689-2822

1239960/61683723v3