UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAS SUPPLY, INC., <br><br> Plaintiff, <br> v. <br><br> RADIANT CUSTOMS SERVICES, INC., et al., <br><br> Defendants. | CASE NO. 2:21-cv-01015-TL <br><br> ORDER ON MOTIONS TO EXCLUDE |

Plaintiff JAS Supply, Inc., seeks damages from Defendants Radiant Customs Services, Inc., and Radiant Global Logistics, Inc., who Plaintiff hired to assist with the importation of personal protection equipment that was refused and destroyed by U.S. Customs and Border Protection ("CBP") allegedly due to Defendants' misconduct. This matter is before the Court on Defendants' Motion to Exclude Kelli Thompson as an Expert (Dkt. No. 87), and Plaintiff's Motion to Limit the Testimony of Defendants' Expert Cameron Roberts (Dkt. No. 89). Having considered the relevant record and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS IN PART and DENIES IN PART the Parties' motions to exclude.

## I.   BACKGROUND

In 2020, Plaintiff contracted with Defendants to import alcohol wipes from foreign manufacturers into the United States to distribute through its established wholesale supply business. Plaintiffs had never imported foreign products before, so it contracted with Defendant Radiant Global Logistics for freight forwarding services and its related business Radiant Customs Services for customs broker services to ensure compliance with U.S. customs processes and requirements. Plaintiffs successfully imported 15 of 19 containers of alcohol wipes, but the final four containers were detained, and eventually refused, by CBP because of missing information required by the Food and Drug Administration related to the originating manufacturer. Plaintiff faults Defendants for the damages that arose from the refused products, among other claims.

In discovery, both sides retained experts in the importation and customs brokerage industries. Plaintiff's retained expert, Kelli Thompson, prepared a report dated June 3, 2022. Defendants' expert, Cameron Roberts, also prepared a report dated June 3, 2022. Both reports were timely disclosed pursuant to Federal Rule of Civil Procedure ("FRCP") 26. Roberts and Thompson then reviewed each other's reports and prepared rebuttal reports. The Parties now move to exclude each other's expert testimony.

## II.   LEGAL STANDARD

Federal Rule of Evidence ("FRE") 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

ORDER ON MOTIONS TO EXCLUDE - 2

This rule imposes an obligation on the Court to act as a gatekeeper and evaluate the admissibility of expert opinion testimony by ensuring that such evidence is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert I*), 509 U.S. 579, 589 (1993)); *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) ("We have interpreted [FRE] 702 to require that '[e]xpert testimony . . . be both relevant and reliable.'" (alteration in original) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001))), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc). The first factor, that the evidence be helpful to the trier of fact, "goes primarily to relevance." *Daubert*, 509 U.S. at 591. The remaining factors speak to reliability, but they are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (internal quotation marks and citations omitted), *as amended* (Apr. 27, 2010); *see also Kumho Tire Co.*, 526 U.S. at 150–52. If in the Court's discretion an expert's opinion is found to be relevant and reliable, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Generally, "an expert witness cannot give an opinion as to [a] *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (emphasis in original). Nor can an expert "provide legal meaning or [a legal] interpret[ation]." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). That said, "[a]n opinion is not objectionable just because it embraces an ultimate issue."

Fed. R. Evid. 704(a); *see also United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) ("[E]xperts may testify as to their opinions on ultimate issues to be decided by the trier of fact.").

### III.  DISCUSSION

The Parties appear to concede that both Thompson and Roberts qualify as experts in the importation and customs brokerage industries.[1] The Parties appear to further concede that expert testimony regarding the customs brokerage regulatory environment, industry standards and practices, and opinions regarding how those regulations and standards apply to the Parties' actions are generally relevant to the issues in this case. Dkt. No. 105 at 3; Dkt. No. 108 at 2.

Plaintiff seeks to exclude Roberts's anticipated testimony regarding the impact of the COVID pandemic on the customs brokerage industry in general and his opinions as to how the COVID pandemic affected the actions of the Parties in this case. Dkt. No. 89 at 8–11. Plaintiff argues that Roberts is not qualified as an expert on the subject and that his anticipated testimony is unhelpful and unreliable. *Id.* Plaintiff also argues that Roberts's testimony should be limited to the extent he intends to offer improper legal conclusions. *Id.* at 11–15.

Defendants' motion to exclude Thompson as an expert focuses on the fact that many of the opinions presented in Thompson's affirmative report can be read as improper legal conclusions, and the rest of her report "summarizes lay facts or constitutes impermissible vouching." Dkt. No. 87 at 9–10. Defendants essentially argue that "Thompson's improper legal opinions and arguments are so excessive and intertwined with her report that she should be excluded from testifying altogether." *Id.* at 9.

---

[1] Plaintiff challenges Roberts's qualifications related to the COVID pandemic specifically (Dkt. No. 89 at 8–9) but does not raise arguments regarding Roberts's industry qualifications in general. In the introduction to their motion, Defendants seem to call into question Thompson's qualifications in comparison to their own expert's qualifications. Dkt. No. 87 at 2–3. However, no actual challenge to her qualifications is made in the argument section of the motion. *See id.* at 9–13.

A. **Roberts's Opinions Regarding the COVID Pandemic Are Admissible**

Plaintiff seeks to exclude Roberts's anticipated testimony related to the COVID pandemic, arguing that Roberts is not qualified and that his testimony would not be relevant or reliable. Dkt. No. 89 at 7–11. Defendants intend for Roberts to opine about "the pandemic's effects on the import industry, . . . . the specific effects that the [] pandemic had on the individuals involved in this case and how it affected their ability to perform their specific work." Dkt. No. 105 at 13.

Plaintiff emphasizes that "Roberts has no relevant education, specialized knowledge, or expertise" regarding the COVID pandemic. Dkt. No. 89 at 8. Specifically, Plaintiff asserts that "he does not have any medical, public health, and/or pandemic training" and that his "entire base of knowledge for his COVID-19 opinion is a general understanding." *Id.* But Roberts does not purport to be an expert on the pandemic specifically, nor does he offer expert opinions about the pandemic from a medical or public health perspective. Roberts's opinions speak to his expert knowledge of the customs brokerage industry informed by his observations and personal experiences during the pandemic. Dkt. No. 105 at 13; *see also* Dkt No. 88-4 at 4–5, 8. Plaintiff does not appear to challenge Roberts's general industry expertise,[2] from which his opinions arise. Therefore, Roberts is qualified to provide expert opinions about the relevant industries during the pandemic based on his personal knowledge, experience, and observations at the time.

Plaintiff further attacks the reliability and relevance of Roberts's opinions as applied to the specific facts of this case by noting that Roberts's opinions are based on facts that are either in dispute or that he had limited personal knowledge about. Dkt. No. 89 at 11; *see also* Dkt.

---

[2] *See supra* n.1.

1  No. 90-8 at 14 (Roberts Dep., 65:19–24).[3] But this argument goes to the weight and credibility of

2  Roberts's opinion testimony, not to its reliability or relevance.

3  The Court therefore DENIES IN PART Plaintiff's motion to the extent it seeks to exclude

4  Roberts's anticipated COVID-related testimony.

5  **B.    Neither Thompson Nor Roberts Shall Offer Improper Legal Conclusions**

6  Defendants' primary argument for excluding Thompson as an expert is that her

7  affirmative report as disclosed is "replete with improper legal conclusions." Dkt. No. 87 at 9.

8  Similarly, Plaintiff argues that Roberts's "anticipated testimony . . . is improper because it

9  pervasively contains inadmissible legal opinion on contested issues." Dkt. No. 89 at 6. The Court

10 agrees that such testimony would be inadmissible. *Nationwide Transp. Fin.*, 523 F.3d at 1058;

11 *McHugh*, 164 F.3d at 454. Therefore, the Court GRANTS IN PART Plaintiff's motion to limit

12 Roberts's testimony, and GRANTS IN PART Defendants' motion to exclude Thompson's testimony,

13 and ORDERS that neither expert shall offer testimony at trial that purports to provide an

14 impermissible legal conclusion or interpretation.[4]

15 **C.    Thompson's Otherwise Proper Expert Opinions Are Admissible**

16 Thompson should not be disqualified as an expert merely because of the form of her

17 report. Defendants argue that Thompson's conclusions are based on a skewed version of the

18 factual record consisting of "regurgitat[ed] facts" provided to her by Plaintiff's counsel. Dkt.

19 No. 87 at 10–11. Interspersed with her allegedly improper "factual narrative," Defendants argue

---

[3] Plaintiff appears to have asked Roberts at his deposition if he knew whether Radiant Customs employees worked "physically in the same building" prior to the pandemic, to which he responded that he did not know. Dkt. No. 90-8 at 14. There is no indication that this line of questioning was further explored. In any event, Plaintiff is free to challenge the scope of Roberts's personal knowledge of the specific facts in dispute at trial for the trier of fact to determine how much weight and credibility to attribute to Roberts's opinions.

[4] The Court will not consider such evidence in its determination of the concurrently pending summary judgment motions if, in its discretion, it determines that an inadmissible opinion is relied on by any Party.

that Thompson invades the purview of the jury by improperly opining on the credibility and culpability of lay witnesses. *Id.* at 10–12. Coupled with the potentially improper formulation of her opinions as legal conclusions, Defendants essentially argue that her report is so deficient as to warrant disqualifying Thompson as an expert witness altogether. *Id.* at 1–2; Dkt. No. 109 at 4–5, 7.

With regard to the formulation of her opinions in her report, Defendants appear to conflate Thompson's written report with the testimony that will be admitted at trial. Thompson's written report, as disclosed to Defendants, will not be admitted into evidence as it would be cumulative of the testimony she will give at trial. As with any trial testimony, Defendants will have an opportunity to object to the *form* of her testimony during the trial, but otherwise "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" an otherwise qualified expert's testimony. *Daubert*, 509 U.S. at 596.

The Court agrees with Defendants that Thompson cannot opine on the credibility or culpability of lay witnesses. Plaintiff seems to recognize that Thompson's opinions regarding the credibility of lay witnesses is improper and has demonstrated how she can cure her opinion testimony. *See, e.g.*, Dkt. No. 107 ¶¶ 82, 84, 88. However, there is one statement Defendants challenge that Thompson has not corrected, and the Court finds improper. Dkt. No. 87 at 5. Thompson cannot opine on the state of mind or understanding of other potential witnesses. *See id.*; *see also* Dkt. No. 107 ¶ 76 ("Maria Vital understood the gravity of the situation . . . ."). Therefore, the Court GRANTS IN PART Defendants' motion and ORDERS that Thompson is prohibited from opining on the credibility or culpability of lay witnesses.[5]

---

[5] *See supra* n.4.

Additionally, Plaintiff appears to demonstrate that the potentially inadmissible formulations of Thompson's substantive opinions, which could be read as legal conclusions in her affirmative report, are also curable. Dkt. No. 102 at 11 n.3; *see also* Dkt. No. 107 (including redlined version of Thompson's affirmative report). In the modified version of the report, Plaintiff provides revised language for multiple allegedly improper conclusions that demonstrate how they could be presented as admissible opinions without changing their substance. Dkt. No. 107 at 16–24. Defendants take issue with this amended report, arguing that it is an untimely attempt to supplement. Dkt. No. 109 at 5–6. Defendants' arguments on this point fail for two reasons: (1) the Court can excuse an untimely supplement if it finds that the disclosure error is harmless; and (2) the Court need not allow the supplementation to find that Thompson can still provide admissible opinions within the scope of her originally disclosed report.

To support their untimely supplementation argument, Defendants cite to this Court's decision in *Lo v. United States*, where the Court excluded the untimely supplemental report of one of the plaintiff's medical experts. No. C17-1202, 2021 WL 5121745 (W.D. Wash. Nov. 3, 2021). *Lo* is distinguishable. There, the medical expert's supplemental report attempted to *add* opinions regarding the reasonableness and necessity of medical bills that were not included in the original affirmative report. *Id.* at *2. Here, Plaintiff's proposed modifications do not attempt to add, or even substantively change, any opinions included in Thompson's original affirmative report, but merely modify the language used to illustrate how they could be presented in a way that does not offend the rule against proffering legal conclusions. *Compare* Dkt. No. 107 at 16–24 *with* Dkt. No. 114-1 at 12–20. The Court may excuse the untimely supplementation of an expert report if the disclosure error is harmless. Fed. R. Civ. P. 37(c)(1); *see also Aldan v. Home Depot USA Inc.*, No. 20-5694, 2022 WL 17740315, at *5 (W.D. Wash. Dec. 16, 2022). Here, there is no indication that Defendants are harmed by the reformatting of Thompson's

ORDER ON MOTIONS TO EXCLUDE - 8

opinions. Defendants deposed Thompson based on her original report and do not appear to challenge any of her deposition testimony. *See* Dkt. Nos. 87 and 109 (Defendants' motion to exclude briefing focusing solely on Thompson's affirmative report with no citations to any improper opinion testimony offered at Thompson's deposition). Defendants also have an expert, Roberts, who is fully prepared to offer rebuttal testimony to all of Thompson's anticipated opinions. *See* Dkt. No. 88-5 (Roberts's rebuttal report in response to Thompson's original affirmative report).

Even if the Court were to disregard the modified version of Thompson's report, it need not find that Thompson must be excluded as an expert witness. The Court's gatekeeper function at this stage is to determine if a proposed expert is qualified to provide testimony that will be relevant and reliable. *Kumho Tire Co.*, 526 U.S. at 147. The Court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 143. Here, there is no challenge to either expert's general qualifications. Defendants cannot argue that the scope of Thompson's intended opinions, to the extent they are presented in an admissible *form*, are not relevant or generally reliable, because to do so would undermine Defendants' own expert's anticipated counter-testimony on the same subject matter. This is a typical case involving dueling experts, and the Court is satisfied that the intended dueling testimony will be relevant and reliable to the extent it is presented in an appropriate and otherwise admissible form at trial.

The Court therefore DENIES IN PART Defendants' motion to the extent it seeks to entirely exclude Thompson as an expert witness.

### IV.  CONCLUSION

Consequently, the Court GRANTS IN PART and DENIES IN PART the Parties' motions to exclude. Dkt. Nos. 87, 89. The Court ORDERS that Thompson is prohibited from offering

opinions regarding the credibility or culpability of lay witnesses. The Court further ORDERS that both Thompson and Roberts are prohibited from offering testimony at trial that purports to provide an impermissible legal conclusion or interpretation.

Dated this 29th day of September 2023.

Tana Lin
United States District Judge