1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAS SUPPLY, INC., | CASE NO. 2:21-cv-01015-TL |
| Plaintiff, | |
| v. | ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| RADIANT CUSTOMS SERVICES, INC., et al., | |
| Defendants. | |

Plaintiff JAS Supply, Inc., seeks damages from Defendants Radiant Customs Services, Inc. ("Radiant Customs"), and Radiant Global Logistics, Inc. ("Radiant Global"), whom Plaintiff hired to assist with the importation of personal protection equipment, which were refused by the U.S. Food and Drug Administration ("FDA") and destroyed by U.S. Customs and Border Protection ("CBP"), allegedly due to Defendants' misconduct. This matter is before the Court on Defendants' Motions for Partial Summary Judgment (Dkt. Nos. 66, 71), and Plaintiff's Motion for Partial Summary Judgment and Counter Motion for Partial Summary Judgment (Dkt.

Nos. 72, 74). Having considered the relevant record and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS IN PART and DENIES IN PART the Parties' respective motions.

## I.   PRELIMINARY MATTER

Defendants first filed a 23-page motion for partial summary judgment on November 17, 2022, that did not include a challenge to Plaintiff's claim under the Washington Consumer Protection Act ("CPA"). Dkt. No. 66. Defendants then filed a second 4-page motion for partial summary judgment on December 1, 2022, challenging only Plaintiff's CPA claim. Dkt. No. 71. At the time, the Local Civil Rules ("LCRs") prohibited parties from "fil[ing] contemporaneous dispositive motions . . . directed toward a discrete issue or claim" without express leave of the Court. LCR 7(e)(3).[1] Additionally, summary judgment motions could not exceed 24 pages without prior leave of the Court. *Id.*; *see also* LCR 7(f). The Court is permitted to ignore any text not included within the specified page limit. LCR 7(e)(6). Defendants neither sought nor received the Court's leave to file a successive motion on a discrete claim or for permission to exceed the total page limit set by the local rules. Defendants' separate motion for partial summary judgment on Plaintiff's CPA claim is therefore procedurally improper and will not be considered by the Court.

Consequently, the Court STRIKES Defendant's procedurally improper successive motion for partial summary judgment (Dkt. No. 71) and related briefing (Dkt. Nos. 77–78, 85–86).

## II.   BACKGROUND

The following facts are undisputed unless otherwise noted.

---

[1] The relevant LCRs were amended after the motions were filed, with the amendments becoming effective on February 1, 2023. This particular rule remains unchanged. All references to the LCRs in this order are to the rules that were in effect at the time the motions were filed. A version of the applicable rules is available in the "Archived Local Rules" section of the District's website, which can be accessed here: https://www.wawd.uscourts.gov/local-rules-and-orders/archived.

A.      **Relevant Background**

During the COVID pandemic, Plaintiff decided to import alcohol wipes from foreign manufacturers into the United States to distribute through its established wholesale supply business. Plaintiff had never previously imported foreign products. Working with an intermediary, Plaintiff chose to contract with Radiant Global for freight forwarding services and Radiant Customs, a related business, for customs broker services to ensure compliance with U.S. customs processes and importation requirements. In May 2020, Plaintiff received a copy of Radiant Customs's credit application and customs power of attorney ("POA") documents, which collectively represent the terms of the Parties' contract as relevant to this case. The contract documents contained a page titled "Governing Terms & Conditions of Service," which included the following provision:

> 9. Disclaimers; Limitation of Liability
> . . . .
> (b) Subject to (d) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;
>
> (c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).
>
> (d) In the absence of additional coverage under (c) above, the Company's liability shall be limited to the following:
> (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or
> (ii) where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less; . . .

Dkt. No. 67-1 at 34. Plaintiff's employee, Amber Starr, who regularly reviews and approves contracts as part of her job, completed the credit application and approved the contract terms

provided by Defendants. The contract was then executed on behalf of Plaintiff by Greg Sidwell, co-owner and operator of the supply business.

Utilizing Defendants' services, Plaintiff successfully imported 15 of 19 containers of alcohol wipes. On September 8, 2020, a shipment was detained because of missing documentation required by the FDA for the products to clear customs. Defendants were notified by the FDA of the product hold. Radiant Customs, in turn, informed Plaintiff and worked with it to obtain the required documents, which Radiant Customs then submitted to the Import Trade Auxiliary Communications System ("ITACS"). The detained shipment was then released by the FDA.

On September 24, 2020, the FDA detained another shipment which included the final four containers of product. Defendants received another hold notice from the FDA dated September 25, 2020, in which the FDA's stated grounds for detaining the final four containers was the foreign manufacturer's failure to register with or list its products in the ITACS as required by the FDA. While it is disputed whether a copy of the September 25 hold notice was also received by Plaintiff, it is undisputed that Plaintiff was not informed by Defendants of the FDA's second hold at that time. Instead, Defendants claim they immediately attempted to provide the necessary paperwork to the FDA through the ITACS, but incorrect information was mistakenly uploaded. Defendants admit that they never received confirmation from the FDA that the required information was received or that the hold was released. Defendants took no further action related to the final four detained containers after the failed attempt to respond to the FDA's hold notice. In December 2020, the FDA issued a Notice of Refusal to Defendants regarding the detained containers, noting that the products would be exported or destroyed due to the failure to provide the requested missing manufacturer information. Plaintiff received a copy of the Notice of Refusal from the FDA in January 2021 and attempted to appeal the refusal. In

April 2021, the appeal was rejected by the FDA as untimely. Plaintiff also addressed the issue with Defendants in February 2021, at which point Defendants appear to have admitted their mistakes.

Plaintiff further points to certain alleged irregularities in Defendants' invoicing and billing practices, supported by billing related communications with and between Defendants' employees. While the Parties appear to dispute the materiality or relevance of the challenged billing practices to any of the issues being considered on summary judgment,[2] the existence of the billing related communications and supporting invoicing documents is not in dispute.

**B.    Procedural History**

Plaintiff filed its original Complaint for damages in July 2021, raising claims for breach of contract, breach of fiduciary duty, and negligence. Dkt. No. 1. Defendants answered, raising as an affirmative defense, among others, that Plaintiff's claims are wholly or partially barred by a contractual limitation of liability clause. Dkt. No. 12 at 6. Defendants then immediately moved for summary judgment, primarily on the limitation of liability issue. Dkt. No. 14. Defendants also moved to stay discovery pending resolution of its dispositive motion. Dkt. No. 17. Plaintiff opposed the request for stay (Dkt. No. 19) and counter-moved for summary judgment in its opposition to Defendants' summary judgment motion, arguing that the limitation of liability provision should be deemed unenforceable. Dkt. No. 24. In its order denying the motion to stay, the Court strongly urged Plaintiff to seek leave to amend its complaint to cure pleading issues identified in the Parties' summary judgment briefing, which would moot much of the premature summary judgment motion practice initiated by Defendants. Dkt. No. 29 at 3–4.

---

[2] The Court notes that the details of these facts appear to primarily relate to Plaintiff's CPA claim, which is not being considered in this order. *See supra* Section I. That said, the asserted facts also tangentially relate to issues raised in the relevant motions as discussed throughout this order.

Heeding the Court's advice, Plaintiff moved for leave to amend, which Defendants opposed. Dkt. Nos. 32, 35. The Court granted Plaintiff's motion for leave to amend and, consistent with its prior order, struck the then still-pending premature summary judgment motions as moot. Dkt. No. 47.

Plaintiff then filed its proposed First Amended Complaint, which raised similar claims as the original Complaint. *Compare* Dkt. No. 49 *with* Dkt. No. 1. The Parties then stipulated to allowing Plaintiff to file a Second Amended Complaint ("SAC"), which is the operative complaint for the present motions. *See* Dkt. Nos. 58–62. In the SAC, Plaintiff continues to allege breach of contract, breach of fiduciary duty, and negligence, but adds additional claims of fraudulent concealment or misrepresentation, unjust enrichment, and violation of the CPA. Dkt. No. 62 ¶¶ 54–91. In their answer to the SAC, Defendants continue to assert their contractual limitation of liability defense. Dkt. No. 65 at 10. The Parties now cross-move for partial summary judgment.

Defendants seek summary judgment on two affirmative defenses: (1) that the contractual limitation of liability clause limits Plaintiff's recovery on any of its contract or tort claims to $200, and (2) that Plaintiff's negligence, fiduciary breach, and fraudulent concealment or misrepresentation claims are barred by the independent duty doctrine. Dkt. No. 66 at 8–20. Defendants also argue that Plaintiff's fraud or misrepresentation claim fails as a matter of law. *Id.* at 20–21. Finally, Defendants argue that the undisputed facts fail to establish Plaintiff's negligence or fiduciary breach claims against Radiant Global, specifically. In opposition to Defendants' motion, Plaintiff counter-moves for summary judgment as to the unenforceability of

the limitation of liability provision and argues that issues of fact preclude dismissal of any of the challenged claims against Radiant Global.[3] Dkt. No. 74 at 8–15.

Plaintiff also separately moves for partial summary judgment, arguing that the undisputed facts establish liability against Radiant Customs (specifically) on its breach of fiduciary duty and fraudulent concealment or misrepresentation claims. Dkt. No. 72 at 2. The Parties' respective motions are fully briefed. *See* Dkt Nos. 66–67, 72–76, 94–95, 97.

### III.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255. The court does not make credibility determinations or weigh evidence at this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[W]here the facts specifically averred by [the non-moving]

---

[3] Neither Party specifically addresses Plaintiff's breach of contract cause of action in their respective motions for summary judgment, instead choosing to focus primarily on the enforceability of the limitation of liability clause. Plaintiff does not distinguish between the two Defendant entities in the SAC and appears to assert each cause of action against each Defendant. *See* Dkt. No. 62 ¶¶ 54–91. In the SAC, Plaintiff identifies only the credit application, POA, and accompanying terms and conditions as constituting the relevant contract between the Parties. *Id.* at ¶ 55. In its briefing on summary judgment, arguing against Radiant Global's ability to rely on the limitation of liability clause, Plaintiff appears to admit that "it is undisputed Radiant Global is not a party to the POA." Dkt. No. 74 at 8. Consequently, Plaintiff's admission raises a question as to the legal viability of its breach of contract claim against Radiant Global going forward.

party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied.").

If the non-movant bears the burden of proof at trial, the movant only needs to show an absence of evidence to support the non-movant's case. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a showing is made, the burden shifts to the non-movant to show more than the mere existence of a scintilla of evidence in support of its case—the party must show sufficient evidence that a jury could reasonably find for the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 252). Even if the non-movant does not have the burden of proof at trial, it must nonetheless show that a genuine issue of material fact exists by presenting evidence in its favor. *FTC v. Stefanchik*, 559 F.3d 924, 929–30 (9th Cir. 2009) (affirming summary judgment for plaintiff where defendants failed to show significantly probative evidence to dispute plaintiff's evidence). In short, Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (citing Fed. R. Civ. P. 56(c)).

## IV.   DISCUSSION

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted). The court rules on each motion "on an individual and separate basis." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)).

### A.      Defendants' Motion for Partial Summary Judgment

Defendants argue that Plaintiff's fraudulent concealment or misrepresentation claim fails as a matter of law. Dkt. No. 66 at 20–21. Defendants also argue that the undisputed facts fail to establish Plaintiff's fiduciary breach and negligence claims against Radiant Global. *Id.* at 22–23. Defendants further argue that the undisputed facts establish two affirmative defenses: (1) the independent duty doctrine bars recovery in tort, and (2) the contractual limitation of liability clause limits Plaintiff's recovery on any of its contract or tort claims. *Id.* at 8–20. In opposition to Defendants' motion, Plaintiff counter-moves for summary judgment as to the unenforceability of the limitation of liability provision and argues that issues of fact preclude dismissal of its claims against Radiant Global. Dkt. No. 74 at 8–15.

### 1.      Fraudulent Concealment or Misrepresentation Claim

Defendants assert "Plaintiff cannot prove either a fraudulent concealment or misrepresentation claim against Radiant Customs or Radiant Global." Dkt. No. 66 at 20. As the moving party on summary judgment, it is Defendants' burden to "show[] that there is no genuine dispute as to any material fact and . . . [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because they do not carry the burden of proof at trial, though, Defendants can succeed by establishing "an absence of evidence to support the non-movant's case." *In re Oracle Corp. Secs. Litig.*, 627 F.3d at 387. In which case, Plaintiff must establish that a genuine dispute of fact exists from which a jury could find in its favor to survive summary judgment. *Id.*

Defendants argue there is insufficient factual evidence for Plaintiff to prove its fraudulent concealment or misrepresentation claim against either Radiant Global or Radiant Customs. Dkt. No. 66 at 21. Per the SAC, Plaintiff's claim rests on the allegation that Defendants had a duty "to disclose the fact the four containers of alcohol wipes had been detained or any information related to an appeals process," but failed to do so. Dkt. No. 62 ¶ 78. "An omission alone cannot

constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007). On the other hand, a fraudulent concealment claim can be established by showing "that the defendant breached an affirmative duty to disclose a material fact." *Crisman v. Crisman*, 931 P.2d 163, 166 (Wash. Ct. App. 1997). As such, the Court understands Plaintiff to make only a fraudulent concealment claim based on the alleged failure to disclose.[4] Dkt. No. 72 at 10–11.

### a. **Radiant Global**

Plaintiff does not appear to dispute that it lacks evidence to prove its fraudulent concealment claim against Radiant Global. First, Plaintiff admits that "Radiant Customs and Radiant Global are separate legal entities." Dkt. No. 74 at 14. Second, Plaintiff did not address Defendants' challenge to its fraudulent concealment claim with respect to Radiant Global at all in its opposition to Defendants' motion. Plaintiff argues only that "[i]n this case, Radiant Customs had a duty to disclose . . . ," and "JAS Supply has viable concealment or misrepresentation tort claims against Radiant Customs for failing to disclose the September 2020 detainment." *Id.* And nothing in Plaintiff's briefing on its own partial motion for summary judgment raises a dispute of fact as to this claim against Radiant Global. *See* Dkt. Nos. 72, 97. Further, Plaintiff concedes that its allegations regarding Radiant Global's involvement in this case go to its "negligence claims. . . . [and] Washington CPA claims" (Dkt. No. 74 at 14–15), and Plaintiff never points to any facts establishing that Radiant Global, as opposed to Radiant Customs, owed a duty to make the specific disclosures that form the basis of its fraudulent concealment claim.

---

[4] Plaintiff pleaded a single cause of action for fraudulent concealment or misrepresentation against both Defendants collectively. For clarity, because the Court finds that Plaintiff failed to plead or otherwise support a misrepresentation claim, the Court's decision means that Plaintiff will not be allowed to proceed with a separate misrepresentation claim against either Defendant at trial.

b.      **Radiant Customs**

On the other hand, Plaintiff's affirmative motion for partial summary judgment includes factual assertions and evidentiary proof from which a trier of fact could find that Radiant Customs breached a duty to disclose the alleged information regarding the FDA's hold and ultimate refusal of the final four containers of imported products. Dkt. No. 72 at 10–16, *see also infra* Section IV.B.2. At a minimum, Plaintiff's affirmative motion sufficiently raises a dispute of material fact to preclude Defendants' request for summary judgment as to the fraudulent concealment claim against Radiant Customs.

Consequently, the Court DENIES IN PART Defendants' motion as to the fraudulent concealment claim against Radiant Customs, GRANTS IN PART the motion with respect to Radiant Global and DISMISSES Plaintiff's fraudulent concealment claim against Radiant Global.

2.      **Breach of Fiduciary Duty Claim Against Radiant Global**

Defendants argue that Plaintiff's breach of fiduciary duty claim against Radiant Global fails because "there is no evidence that any conduct by Radiant Global caused or contributed to the shipment being refused by the FDA." Dkt. No. 66 at 22. Plaintiff's specific allegation on this claim in the SAC, without distinguishing between the two Defendant entities, is that they "breached [their respective] fiduciary dut[ies] to JAS Supply by failing to act in JAS Supply's best interest and/or report information affecting JAS Supply's interests in response to the September 25, 2020, Notice of FDA Action – Hold Designated of the subject four containers of alcohol wipes." Dkt. No. 62 at ¶ 67. As previously noted, Plaintiff admits that its allegations regarding Radiant Global's involvement in this case focus on its billing irregularity and licensing violation claims, which go to its "negligence claims. . . . [and] Washington CPA claims." Dkt. No. 74 at 14–15. Plaintiff never points to any facts establishing that Radiant Global owed a

fiduciary duty related to the specific acts that allegedly caused the FDA to refuse the detained products or deny Plaintiff's appeal.

Accordingly, the Court GRANTS Defendants' motion on this claim and DISMISSES Plaintiff's breach of fiduciary duty claim against Radiant Global.

### 3.  **Negligence Claim Against Radiant Global**

Defendants argue that Plaintiff's negligence claim against Radiant Global fails for the same reasons as its fiduciary breach and fraudulent concealment claims, because there is no evidence of Radiant Global's complicity in the acts that cause the products to be refused by the FDA. Dkt. No. 66 at 22–23; Dkt. No. 76 at 10. However, Plaintiff's negligence claim in the SAC relies on allegations related to the Defendants' billing irregularities and provision of unlicensed customs brokerage services. Dkt. No. 62 at 72–73. Contrary to Defendants' assertions on summary judgment, Plaintiff's negligence claim against Radiant Global is not dependent on evidence related to the FDA hold and refusal. Plaintiff has produced sufficient evidence to raise a dispute of fact regarding Radiant Global's possible breach of a common law duty of care owed to Plaintiff involving its billing and supervisory practices related to the provision of customs brokerage services in conjunction with Radiant Customs. Dkt. No. 74 at 14–15.

The Court therefore DENIES Defendants' motion for partial summary judgment to the extent it seeks to dismiss Plaintiff's negligence claim against Radiant Global.

### 4.  **Independent Duty Doctrine**

Defendants argue that Plaintiff's extracontractual claims against Radiant Customs for negligence, fiduciary breach, and fraudulent concealment are barred by the independent duty doctrine.[5] "The independent duty doctrine, previously known as the economic loss rule, bars

---

[5] Defendants' arguments on this issue focus solely on the specified claims against Radiant Customs, and Defendants never address any claims as to Radiant Global. *See* Dkt. No. 66 at 16–20. This is consistent with Plaintiff's position

1  recovery in tort for economic losses suffered by parties to a contract unless the breaching party

2  owed a duty in tort independent of the contract." *Pointe at Westport Harbor Homeowners' Ass'n*

3  *v. Eng'rs Nw., Inc., P.S.*, 376 P.3d 1158, 1162 (Wash. Ct. App. 2016) (citing *Eastwood v. Horse*

4  *Harbor Found., Inc.*, 241 P.3d 1256 (Wash. 2010) (en banc)). Under Washington law, broad

5  application of the independent duty doctrine is not permitted. *Eastwood*, 241 P.3d at 1261

6  ("[T]he broad application of the economic loss rule does not accord with our cases.").

7       Defendants' arguments appear to rest on the presumption that none of the

8  extracontractual duties upon which the challenged claims are based would be imposed on

9  Radiant Customs without the parties having entered into the contract in the first place, and thus

10 the duties must be found to arise directly from the contract limiting Plaintiff to contractual

11 remedies per the doctrine. Dkt. No. 66 at 16–20. The Court notes that Plaintiff does not appear to

12 address these arguments directly in its opposition briefing. *See* Dkt. No. 72. However, Plaintiff

13 does sufficiently flesh out the non-contractual grounds for the fiduciary breach and fraudulent

14 concealment claims in its affirmative motion for partial summary judgement. Dkt. No. 74

15 at 13–15. In any event, the Court finds that Defendants misstate the doctrine in their argument,

16 seeking a far broader application than is allowed under Washington law.

17       It is not sufficient to argue that a contractual relationship exists to assert the doctrine to

18 prohibit all parallel extracontractual claims. "Economic losses are sometimes recoverable in tort,

19 even if they arise from contractual relationships." *Eastwood*, 241 P.3d at 1261; *see also id.* at

20 1271 (Chambers, J., concurring) ("[I]n civil law we have several bodies of law including contract

21 law and tort law, the former based upon duties voluntarily assumed by agreement and the latter

22 based upon duties imposed by law, and they may simultaneously apply to the same event.").

23 _____

24 that Radiant Global is not a party to the operative contract in this case. Dkt. No. 74 at 8. The Court will therefore
   address the issue as to the stated non-contractual claims against Radiant Customs only.

"[T]he fact that an injury is an economic loss or the parties also have a contractual relationship is not an adequate ground, by itself, for holding that a plaintiff is limited to contract remedies." *Id.* at 1261.

Plaintiff has adequately alleged an independent source of duties for its breach of fiduciary duty and fraudulent concealment claims against Radiant Customs. Regardless of how their relationship formed, Plaintiff alleges that Radiant Customs assumed both fiduciary duties and affirmative disclosure duties imposed by common law tort principals, federal regulations governing licensed customs brokers, and codified law in Washington governing fiduciary relationships. Dkt. No. 62 ¶¶ 61–83; *see also infra* Sections IV.B.1–2.

On the other hand, in the SAC, Plaintiff's negligence claim against Defendants collectively (again undifferentiated between the two entities) rests on an asserted general common law tort duty of care "in providing customs broker and importation and/or customs business and freight forwarding services." Dkt. No. 62 ¶ 71. Plaintiff then specifically alleges that Defendants collectively breached their duties of care by: (1) "performing customs business without a license or under the supervision of a licensed customs broker in violation of federal law," and (2) "charging duty outlay fees in excess of 1.5% on invoices . . . contrary to the new customer cover letter, on Radiant Global letterhead, describing the fees that would be charged . . . ." *Id.* ¶¶ 72–73. On summary judgment, Plaintiff concedes that "Radiant Global is a freight forwarder . . . . [and] Radiant Customs is the licensed customs broker." Dkt. No. 74 at 4. This admission appears to preclude the claim that Radiant Customs negligently conducted unlicensed customs business. Additionally, the Court has not identified any arguments or record citations indicating a duty imposed on Radiant Customs's billing practices outside of the Parties' contract. Thus, to the extent Radiant Customs, by and through Radiant Global, negligently

charged fees in excess of those agreed upon, that claim would be barred by the independent duty doctrine.

Consequently, the Court DENIES Defendants' request for summary judgment on its independent duty defense with respect to the breach of fiduciary duty and fraudulent concealment claims against Radiant Customs. However, the Court GRANTS Defendants' summary judgment with respect to Plaintiff's extracontractual negligence claim against Radiant Customs, FINDS the negligence claim is barred by the independent duty doctrine, and DISMISSES the claim.

5.    **Contractual Limitation of Liability Clause**

Defendants argue that the limitation of liability clause is enforceable as a matter of law and should be applied on summary judgment to limit Plaintiff's recovery for any of its claims against Radiant Customs that arise from the allegations regarding the FDA hold and subsequent refusal of the four product containers, regardless of whether the claims sound in contract or tort. Dkt. No. 66 at 8–16. From the Court's understanding of Plaintiff's claims as pleaded in the SAC, this would include the breach of contract, breach of fiduciary duty, and fraudulent concealment claims.[6] *See* Dkt. No. 62 ¶¶ 54–91. In opposition, Plaintiff appears to concede that Radiant Customs was providing "customs brokerage services" when it committed the alleged acts giving rise to its breach of contract and fiduciary duty claims (Dkt. No. 74 at 8) but argues that the fraudulent concealment claim is independent of the contract and cannot therefore be limited by

---

[6] To the extent the exculpatory provision could potentially apply to the negligence claim against Radiant Customs, as pleaded it is barred by the independent duty doctrine and has already been dismissed. *See supra* Section IV.A.4. Additionally, as with Plaintiff's negligence claim, per the SAC, its unjust enrichment and CPA violation claims do not appear to arise from the alleged actions that led to the FDA refusal, but instead focus on Defendants' allegedly inappropriate billing activities. Dkt. No. 62 ¶¶ 84–91. As such, those two claims are outside of the scope of the Court's consideration on summary judgment as they do not appear to have been raised by Defendants in their affirmative motion.

the exculpatory clause (*id.* at 13–14). Plaintiff also argues that disputes of fact regarding whether the exculpatory clause is unconscionable or violates public policy precludes finding that it is enforceable as a matter of law on summary judgment. *Id.* at 9–13. Finally, Plaintiff argues that Radiant Global cannot rely on the exculpatory clause as a matter of law, because it is not a party to the contract. *Id.* at 8.

The Court will begin by discussing the enforceability of the limitation of liability clause and then discuss the scope of the clause's applicability.

a.     ***Enforceability: Limitation of Liability Clause is Not Unconscionable***

Whether a limitation of liability clause in a contract is unconscionable is a question of law. *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 47 P.3d 940, 945 (Wash. 2002); *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995). In a commercial contracting setting, an exculpatory clause is presumptively enforceable when there is no indicia of unfair surprise,[7] and the totality of the circumstances indicate that it is not unconscionable. *Puget Sound Fin.*, 47 P.3d at 945–46. Washington courts have "recognized the following nonexclusive factors to consider in assessing the unconscionability of a liability exclusionary clause: (1) the conspicuousness of the clause in the agreement; (2) the presence or absence of negotiations regarding the clause; (3) the custom and usage of the trade; and (4) any policy developed between the parties during the course of dealing." *Id.* at 946. To survive summary judgment, Plaintiff must point to evidence that "raises the possibility" that the clause is unconscionable, even if Plaintiff's evidence is "insufficient to resolve whether it is unconscionable as a matter of law." *Bayside*

---

[7] Here, neither Party raises any arguments regarding unfair surprise. The undisputed evidence establishes that the present contract is "between competent [entities] dealing at arm's length, with no claim of an adhesion contract, [] the contract contains a specific disclaimer[,] and [] the contract language is clear." *Am. Nursery Prods.*, 797 P.2d at 482. As such, the Court finds that there are no indicia of unfair surprise based on the undisputed facts presented on summary judgment.

1   *Gardens Apartment Ventures v. Sec. Pac. Sav. Bank*, No. 34803-5-I, 1996 WL 442689, at *6

2   (Wash. Ct. App. Aug. 5, 1996) (citing *Nelson*, 896 P.2d at 1262).

3       <u>Conspicuousness</u>. Defendants argue that the limitation provision in the contract is

4   sufficiently conspicuous to weigh against unconscionability. Dkt. No. 66 at 10. This factor

5   typically requires a determination as to "whether the important terms were hidden in a maze of

6   fine print." *Puget Sound Fin.*, 47 P.3d at 945–46 (quoting *Am. Nursery Prods., Inc. v. Indian

7   Wells Orchards*, 797 P.2d 477, 481 (Wash. 1990) (en banc)). Defendants note that the clause is

8   clearly labelled as a limitation of liability clause, is included on a single page titled "Governing

9   Terms & Conditions of service" of a document that is only four pages long in its entirety, is

10  drafted in the same font as all of the other clauses, and is unambiguously written. Dkt. No. 66

11  at 4, 10. Plaintiff does not directly refute Defendants' arguments regarding how conspicuous the

12  clause is in the contract. Instead, Plaintiff attempts to rely on an apparent misreading of the

13  clause itself to argue that the clause either unambiguously does not apply to the claims at issue or

14  is so ambiguous as to be inconspicuous, requiring a factual determination by a jury as to its

15  actual meaning. Dkt. No. 74 at 9–10.

16      Contract interpretation is generally a question of law. *Tanner Elec. Co-op. v. Puget

17  Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash.1996). By its plain language, the clause

18  applies to any claims based on Radiant Customs's "negligent acts, which . . . cause . . . loss or

19  damage to Customer's goods" and limits liability in the following ways: (1) damages for

20  negligent acts unrelated to the core services being offered by Radiant Customs—*i.e.*, "activities

21  other than those relating to customs brokerage"—are limited to "$50.00 per shipment or

22  transaction," but (2) if the negligent acts relate to "Customs business," then damages are limited

23  to "$50.00 per entry or the amount of brokerage fees paid. . .  whichever is less." Dkt. No. 73-7

24  at 7.

1    Plaintiff argues that its allegations fall outside of the plain language of either sub-clause

2    of the provision by splitting hairs between what activity is "related to customs brokerage" and

3    what is "Customs business." *See* Dkt. No. 74 at 9–10. Plaintiff argues that the first sub-clause is

4    inapplicable because it only covers "activities *other than* those relating to customs brokerage,"

5    and the second sub-clause cannot apply because "Customs business" is not defined within the

6    contract itself. *Id.* Plaintiff asserts that the use of an undefined term in the second sub-clause

7    either renders it sufficiently ambiguous as to make it fatally inconspicuous, or, at a minimum,

8    raises a dispute of fact as to what is or is not considered "Customs business," such that the

9    question cannot be resolved on summary judgment. *Id.* The Court disagrees.

10    As an initial matter, the Court agrees with Plaintiff's assessment regarding the

11    inapplicability of the initial sub-clause. Here, Plaintiff admits that Radiant Customs was

12    providing customs brokerage services (*id.*), and Defendants do not assert the limitation of

13    liability from this sub-clause, focusing instead on the sub-clause regarding "any claims relating

14    to 'Customs business'" (Dkt. No. 66 at 4). Thus, the initial sub-clause of the limitation provision

15    is inapplicable.

16    The Court disagrees, though, that the use of the term "Customs business" to describe

17    activities covered by the second sub-clause renders the entire limitation provision fatally

18    ambiguous. Plaintiff correctly asserts that "[a] clause is ambiguous only 'when, on its face, it is

19    fairly susceptible to two different interpretations, both of which are reasonable.'" Dkt. No. 74

20    at 9 (quoting *Quadrant Corp. v Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005)). Plaintiff's

21    argument is curious given that in its own affirmative motion for summary judgment, Plaintiff

22    asserts that "Customs business" is a clearly defined term in the industry by statute: "'Customs

23    business' is defined to include activities involving transactions with U.S. Customs and Border

24    Protection concerning entry and admissibility of merchandise. 19 CFR § 111.1." Dkt. No. 72

at 12. Plaintiff's arguments regarding conspicuousness fail because the second sub-clause unambiguously applies to the relevant claims against Radiant Customs.

Ability to Negotiate. Defendants argue that Plaintiff had a reasonable opportunity to negotiate the terms of the contract, including the limitation of liability provision, and there is no evidence indicating otherwise. Dkt. No. 66 at 10. Defendants further argue that the undisputed evidence on summary judgment contradicts Plaintiff's allegations in the SAC that they had no opportunity to negotiate the terms of the agreement. *Id.* at 10 (citing Dkt. No. 62 ¶¶ 12, 35). The Court agrees.

Whether or not the Parties actually engaged in any specific negotiations regarding the challenged contract term prior to contract formation, the pertinent question for the Court is whether the party challenging the contract term "had a reasonable opportunity to understand the terms of the clause, which remained unchanged throughout the course of dealing." *Puget Sound Fin.*, 47 P.3d at 947. There is no dispute that Plaintiff accepted the first recommendation it received from its third-party intermediary when seeking a company to partner with for customs brokerage services. Dkt. No. 73-2 at 10 (33:13–18). There is no dispute that Plaintiff reviewed, approved, signed, and returned the contract it received from the intermediary all in the same day. Dkt. No. 67-1 at 24 (41:19–24). It is also undisputed that Plaintiff was under no perceived pressure or obligation from Defendants to expedite its contracting activities. *Id.* at 25 (42:6–19). Plaintiff's employee, Ms. Starr, confirmed that she reviewed the contract documents, including the terms and conditions containing the operative exculpatory clause, and forwarded the documents to Mr. Sidwell without raising any concerns. Dkt. No. 67-1 at 21–22 (37:24–38:22). Mr. Sidwell does not remember whether he reviewed the documents himself before signing them, but the undisputed evidence indicates that the contract was signed by him without any indication of reservation or apprehension. *Id.* at 8 (31:7–11); 23–24 (40:24–41:2), 30–34.

None of the evidence presented indicates Plaintiff was denied an opportunity to negotiate the terms of the contract or was otherwise prohibited from taking more time to understand the provisions in the contracting documents provided to it by its intermediary. Instead, on Plaintiff's own initiative, it executed the contracting documents without negotiation or discussion the same day it received them. *Id.* at 24–25 (41:19–42:19). In its opposition and counter-motion for summary judgment regarding the limitation of liability clause, Plaintiff does not appear to dispute that it had a reasonable opportunity to review and understand the contract before signing. *See* Dkt. No. 74 at 7–12. Thus, this factor fails to support a claim of unconscionability.

<u>Custom and Usage in Trade</u>. Defendants support their claim that substantially similar "limitation of liability" provisions are common in the customs brokerage industry, pointing the Court to (1) publicly available examples of substantially similar terms used by other customs brokers, including Washington-based businesses; (2) citing cases where federal courts across the country, including courts in this District, have generally found similar provisions to be enforceable; and (3) expert opinion testimony. This evidence is sufficient to support the enforceability of the limitations of liability clause. *See Puget Sound Fin.*, 47 P.3d at 947.

Plaintiff attempts to challenge this factor by arguing that some of the cases cited by Defendants are distinguishable on course-of-dealing grounds, even though the cases were presented to support Defendants' usage in trade arguments. *See* Dkt. No. 74 at 11. Course of dealing is a separate factor to be considered in the Court's analysis, but the fact that courts have generally found the usage of analogous provisions common throughout the customs brokerage trade weighs in favor of enforceability.

Plaintiff also attacks Defendants' retained expert's opinion that the use of such exculpatory clauses in contracts for customs brokerage services is a common industry practice, arguing that it is an improper legal conclusion that should be disregarded. Dkt. No. 74 at 11–12.

The Court acknowledges that it has prohibited the Parties' respective experts from offering improper legal conclusions, which it indicated would be disregarded on summary judgment. *See* Dkt. No. 115 at 6, n.4. The Court disagrees, though, that Defendants' expert is offering an improper legal conclusion here. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a); *see also United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) ("[E]xperts may testify as to their opinions on ultimate issues to be decided by the trier of fact."). Expert testimony regarding "common industry practice" is generally acceptable to establish usage in trade. *See, e.g.*, *Puget Sound Fin.*, 47 P.3d at 948 (highlighting as evidence in support of enforceability on this factor "an expert who testified that liability exclusions were common industry practice"). Plaintiff hired its own customs brokerage expert (*see* Dkt. Nos. 88-2, 114-1) but presented no evidence (expert or otherwise) to contradict the common industry use of limitation of liability provisions such as the one at issue. Thus, this factor weighs heavily towards enforceability.

Course of Dealing. The only evidence Plaintiff offers on this factor is that it is undisputed that it had no prior course of dealing with Defendants, or any other customs broker, before entering into the agreement containing the allegedly unconscionable exculpatory clause. Dkt. No. 74 at 11. Plaintiff offers no authority for the proposition that lack of prior dealings between the parties alone is sufficient to "raise the possibility" of unconscionability. *See Bayside Gardens Apartment Ventures*, 1996 WL 442689, at *6.

Defendants appear to acknowledge the lack of prior dealings but argue instead that this factor encompasses more than the extent of the parties' prior dealings. Dkt. No. 66 at 14 (citing *Reule v. H.O. Seiffert Co.*, No. C08-1591 MJP, 2009 WL 2057047, at *4 (W.D. Wash. July 13, 2009), *aff'd*, 430 F. App'x 584 (9th Cir. 2011)); Dkt. No. 76 at 7 (noting Plaintiff's failure to address *Reule* in its opposition). The Court agrees. The question for the Court is whether the lack

of prior dealings somehow affected "the circumstances of the agreement" as to raise the possibility of unconscionability. *See Reule*, 2009 WL 2057047, at *4. Considering the totality of the circumstances based on the undisputed facts of this case, the Court does not find any evidence to support a claim of unconscionability based on the limited course of dealings that led to the Parties' agreement.

Here, it is undisputed that the limitation of liability clause was included in the contracting documents that were presented to Plaintiff. Dkt. No. 67-1 at 30–34. Plaintiff is a sophisticated business that has been in operation for 25 years. *Id.* at 3 (9:11–13). Ms. Starr has been responsible for reviewing contracts for Plaintiff for at least 5 years. *Id.* Yet, despite never having contracted with a customs brokerage firm previously, Ms. Starr did not seek legal review of the contract nor raise any concerns about any of the terms before forwarding the contract to Mr. Sidwell for execution. *Id.* at 21–22 (37:24–38:22). Mr. Sidwell, in turn, admits that he does not even remember taking the time to read the contract before signing it. *Id.* at 8 (31:7–11). Instead, on its own initiative, without outside pressure or influence, Plaintiff reviewed, approved, signed, and returned the contract it received from its intermediary within the same day. Dkt. No. 67-1 at 24 (41:19–24). The undisputed evidence appears to indicate that Plaintiff's interest in expediting the contracting process to exploit a potentially lucrative business opportunity outweighed its interest in mitigating any potential contractual risks. *Id.* at 5–6 (24:18–25:15), 10 (43:6–24). Thus, this factor also fails to support a claim of unconscionability.

Consequently, Plaintiff fails to present any evidence that raises a possibility of unconscionability. The Court therefore FINDS that the limitation of liability clause is not unconscionable as a matter of law.

1          b.      ***Enforceability: Limitation of Liability Clause Not Against Public Policy***

2          Defendants argue that there is no evidence to support Plaintiff's claim that the limitation

3   of liability clause violates public policy. Dkt. No. 66 at 15. Defendants further assert that the

4   repeal of a federal prohibition on the use of exculpatory clauses by customs brokers declares a

5   generally applicable public policy in favor of their use. *Id.* Defendants overstate the importance

6   of the Congressional repeal to the Court's determination. Since the repeal of the federal

7   restriction, enforceability of exculpatory clauses by customs brokers has been dependent on the

8   application of state contract law. *See, e.g.*, *Morgan Home Fashions, Inc. v. UTI, U.S., Inc.*, No.

9   C3-772, 2004 WL 1950370, at *3 (D. N.J. Feb. 9, 2004) ("No longer barred by federal

10  regulations, the legality of a given exculpatory clause now hinges upon the applicable state

11  law.").

12         In Washington, courts consider six factors to determine if enforcing a contract term might

13  go against public policy: whether "(1) the agreement concerns an endeavor of a type thought

14  suitable for public regulation; (2) the party seeking to enforce the [exculpatory agreement] is

15  engaged in performing an important public service, often one of practical necessity; (3) the party

16  provides the service to any member of the public, or to any member falling within established

17  standards; (4) the party seeking to invoke the [exculpatory agreement] has control over the

18  person or property of the party seeking the service; (5) there is a decisive inequality of

19  bargaining power between the parties; and (6) the [exculpatory agreement] is a standardized

20  adhesion contract." *Chauvlier v. Booth Creek Ski Holdings, Inc.*, 35 P.3d 383, 387 (Wash. Ct.

21  App. 2001) (citing *Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 758 P.2d 968, 971

22  (Wash. 1988)). Here, neither Party directly addresses each of the six factors in their respective

23  motions for summary judgment.

24

1    Instead, Plaintiff argues that the second of the *Wagenblast* factors is sufficient to raise a

2    dispute of fact on this issue. Dkt. No. 74 at 12. That factor is sometimes considered to carry more

3    weight than the other five factors in the analysis. *See Airlines v. The Boeing Co.*, No. 07-2-

4    34027-1SEA, 2008 WL 5617149 (Wash. Super. Ct., Dec. 04, 2008) ("[T]he second *Wagenblast*

5    factor carries significant weight."); *see also Chauvlier*, 35 P.3d at 388 (noting that a "common

6    determinative factor for Washington courts has been the services' or activities' importance to the

7    public" (quoting *Vodopest v. MacGregor*, 913 P.2d 779, 788 (Wash. 1996))). That said, "the

8    more of the []six characteristics that appear in a given exculpatory agreement case, the more

9    likely the agreement is to be declared invalid on public policy grounds." *Wagenblast*, 758 P.2d

10   at 971.

11   As an initial matter, Plaintiff fails to establish that any evidence supports its public policy

12   claim on *any*, let alone on a majority, of the remaining five factors. Nor does the Court believe

13   that the undisputed facts in the case would support such a finding. First, the undisputed facts

14   show that the customs brokerage industry is heavily federally regulated. Dkt. No. 74 at 4–5. In

15   fact, Plaintiff heavily relies on these regulations to support its claims. *See, e.g.*, Dkt. No. 72 at 12.

16   But Plaintiff cannot refute the claim that Congress has affirmatively chosen to remove a

17   prohibition against exculpatory clauses from those regulations. Dkt. No. 66 at 15; Dkt. No. 76

18   at 8, n.5. Second, there is no evidence that Defendants hold themselves out as willing to perform

19   their services for any member of the public. Defendants are private business entities that only

20   offer their services to customers willing to enter into a commercial contractual relationship.

21   Third, while Defendants did assume some control over Plaintiff's property through the

22   agreement, in so much as their activities controlled whether the products would be allowed entry

23   into the United States, the contract also expressly provided an opportunity for Plaintiff to control

24   the amount of contractual risk it would assume due to the limitation of liability clause by

purchasing supplemental liability protection. Dkt. No. 67-1 at 34. Fourth, as previously noted, there is no evidence of an imbalance in bargaining power, in so far as both Parties are sophisticated businesses involved in a routine commercial transaction. Finally, this case does not involve a contract of adhesion, as Plaintiff could have negotiated the terms (although it chose not to) or could have sought out an alternate broker with more favorable terms to contract with instead.

Plaintiff fails to present sufficient evidence on the second *Wagenblast* factor to outweigh these other considerations. Plaintiff argues that its contract with Defendants to import COVID-related PPE was sufficiently in the public interest to warrant finding the limitation of liability clause violates public policy. Dkt. No. 74 at 12. Cases that have found this factor essentially dispositive all involve "essential public services—hospitals, housing, public utilities, and public education." *See Shields v. Sta-Fit, Inc.*, 903 P.2d 525, 528 (Wash. Ct. App. 1995) (internal citations omitted) (collecting cases). In *Shields*, the business in question was a health club, and the relevant argument rested on an attempt to analogize the public health benefits of health clubs to the benefits provided by the enumerated "essential public services," but the court rejected this argument. *Id.* Other than vaguely referencing the public need for PPE during the COVID pandemic, Plaintiff provides no support for its implication that customs broker services at the time were of equal importance as hospitals, housing, public utilities, and public education. Nevertheless, as in *Shields*, the Court finds that any attempt at such an analogy here would similarly fall short. *See id.* Accordingly, the Court finds none of the *Wagenblast* factors weigh against the enforceability of the limitation of liability clause.

The Court FINDS that the limitation of liability clause does not violate public policy and is therefore enforceable as a matter of law.

c.       ***Scope: Not Applicable to Radiant Global***

It is undisputed that Radiant Global is not a party to the contract containing the relevant limitation of liability clause. Therefore, the Court FINDS that the clause cannot be asserted as limiting recovery for any of Plaintiff's surviving claims against Radiant Global as a matter of law.

d.       ***Scope: Enforceable for Contract or Tort Claims Against Radiant Customs***

Plaintiff concedes that as a customs broker, Radiant Customs is bound by federal regulations which define "Customs business . . . to include activities involving transactions with U.S. Customs and Border Protection concerning entry and admissibility of merchandise," and imposes an obligation, independent of the contract, to "not withhold information relative to any customs business from a client who is entitled to the information." Dkt. No. 72 at 12 (internal quotation marks omitted) (quoting 19 CFR §§ 111.1, 111.39(a)). Thus, the undisputed facts establish that all of Radiant Customs's allegedly harmful activity that led to the refusal of the containers is, by regulatory definition, "Customs business." By its plain terms, the limitation clause applies when any "claim arises from activities relating to 'Customs business.'" Dkt. No. 67-1 at 34; *see also supra* Section IV.A.5.a. Because Plaintiff's breach of contract, breach of fiduciary duty, and fraudulent concealment claims[8] against Radiant Customs all arise from the same alleged activities, each claim expressly falls within the scope of the limitation clause.

Consequently, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment and FINDS that the limitation of liability clause is enforceable as to Plaintiff's claims against Radiant Customs for breach of contract, breach of fiduciary duty, and fraudulent concealment. The Court also GRANTS IN PART and DENIES IN PART Plaintiff's counter-motion for

---

[8] *See supra* n.6 regarding the remaining claims against Radiant Customs.

1  summary judgment and FINDS that the limitation of liability clause is unenforceable as to any

2  surviving claims against Radiant Global.

3  **B.     Plaintiff's Motion for Partial Summary Judgment**

4       Plaintiff argues the undisputed facts establish liability against Radiant Customs on its

5  breach of fiduciary duty and fraudulent concealment claims.[9] Dkt. No. 72 at 2. Because Plaintiff

6  has the burden of proof on the claims at trial, to prevail on summary judgment, Plaintiff must

7  "make a showing sufficient to establish the existence" of each element of its claims. *Celotex*

8  *Corp.*, 477 U.S. at 322. Defendants can defeat summary judgment by raising a dispute of fact as

9  to any required element. *Id.*

10      **1.     Breach of Fiduciary Duty**

11      The essential elements of a fiduciary duty claim are "(1) [the] existence of a duty owed,

12  (2) [a] breach of that duty, (3) [a] resulting injury, and (4) that the claimed breach proximately

13  caused the injury." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206,

14  1217 (Wash. Ct. App. 2002); *see also Bushbeck v. Chi. Title Ins. Co.*, 632 F. Supp. 2d 1036,

15  1044 (W.D. Wash. 2008). Plaintiff argues that each of these elements is established by the

16  undisputed evidence in this case. Dkt. No. 72 at 2. Defendants do not appear to dispute that the

17  first three elements are met but instead appear to argue that Plaintiff's own actions raise a dispute

18  of fact as to proximate cause. Dkt. No. 94 at 6–8.

19      Specifically, Defendants claim that Plaintiff had a separate and independent duty of care

20  as an importer of record, imposed by federal customs regulations, to ensure the quality and

21  accuracy of any information provided to CBP. *Id.* at 6. Defendants argue that evidence of

22

23  [9] In opposition to Plaintiff's affirmative motion, Defendants reiterate their arguments regarding the applicability of
the limitation of liability clause to these claims. Because the Court has already found that the limitation clause is
24  enforceable and applicable to these claims (*see supra* Section IV.A.5), the Court will not readdress Defendants'
arguments here.

1    Plaintiff's breach of its own duty of care raises a genuine dispute of fact as to proximate cause.

2    *Id.* Defendants' attempt to pass the buck fails.

3          The undisputed evidence shows that, upon receiving the relevant hold notice, a Radiant

4    Customs employee immediately uploaded insufficient paperwork to ITACS without informing

5    Plaintiff or confirming the accuracy of the documents with anyone. Dkt. No. 94 at 3. This is in

6    contrast to the undisputed evidence regarding a prior hold notice, where Radiant Customs did

7    inform Plaintiff and provided Plaintiff an opportunity to confirm the information required to be

8    uploaded to ITACS. *Id.* Further, Defendants' response to Plaintiff's motion admits that while the

9    CBP's Informed Compliance Publication states that an importer of record should have a

10   responsible and knowledgeable individual within its organization, the role of that individual is to

11   "review the customs documentation *prepared by the broker to ensure it is full, complete, and*

12   *accurate*." *Id.* at 6 (emphasis added). But Radiant Customs deprived Plaintiff of the opportunity

13   to review the documentation it prepared and uploaded on September 25, 2020, by never

14   providing them a copy of it. Thus, the evidence establishes that it was Radiant Customs's actions

15   regarding the hold notice, and not Plaintiff's, that lead to erroneous paperwork being uploaded to

16   the ITACS, which in turn ultimately led to the containers being refused.

17         Defendants also claim that there is a genuine dispute of fact as to whether Plaintiff

18   received a copy of the hold notice in question contemporaneously with Radiant Customs

19   receiving the notice. *Id.* at 7–8. Defendants argue that this is a material dispute because if

20   Plaintiff knew of the hold notice but failed to follow up about it until after the response and

21   appeal period passed, then Plaintiff's own inaction could be found to be the actual cause of the

22   refusal of the containers. *Id.* Defendants' claim regarding the receipt of the notice is based on the

23   FDA's April 2021 denial of appeal, stating that it *mailed* a copy of the hold notice to Plaintiff, as

24   well as to Radiant Customs, in September 2020. *Id.* at 8 (quoting Dkt. No. 95-1 at 18).

1   Defendants argue that the undisputed facts also indicate that the FDA had Plaintiff's correct

2   mailing address. *Id.* At most, this proves that a copy of the September 25 hold notice was sent to

3   Plaintiff, not that it was ever received by Plaintiff.

4      Even if these facts imply that Plaintiff should have been aware of the hold in late

5   September, that is not sufficient to warrant denial of summary judgment. In Washington,

6   "contributory negligence no longer operates to bar recovery by a tort victim but may affect the

7   damages recovered." *ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 656 (Wash. 1998)

8   (internal citation omitted). Thus, even if Plaintiff's own actions may have contributed to the

9   alleged injuries, that does not bar Plaintiff from establishing liability against Radiant Customs for

10  its actions on summary judgment. The undisputed facts establish that the chain of causation

11  began when Radiant Customs *immediately* uploaded incorrect information into ITACS in

12  response to the September 25 hold notice, without informing or consulting with Plaintiff or

13  following up to ensure the hold was released, and that chain of causation was never broken up to

14  the time that the products where refused, which was after the appeal period had already elapsed.

15     The Court therefore GRANTS Plaintiff's motion for partial summary judgment as to

16  liability on its breach of fiduciary duty claim against Radiant Customs.

17     2. **Fraudulent Concealment**

18     As previously discussed, pursuant to the allegations in the SAC, the Court understands

19  Plaintiff to make only a fraudulent concealment claim based on Radiant Customs's alleged

20  failure to disclose information related to the hold notice and appeal process. *See supra* Section

21  IV.A.1. As such, Plaintiff can establish its claim by showing "that the defendant breached an

22  affirmative duty to disclose a material fact." *Crisman*, 931 P.2d at 166.

23     Defendants argue that factual disputes preclude summary judgment, relying on facts that

24  show (1) Radiant Customs acted in response to the hold notice similarly to how it responded to

the prior hold notice; (2) it had no reason to know or suspect that anything was wrong with its response; (3) Plaintiff may have received notice of the hold at the same time and never inquired about it; and (4) both Radiant Customs and Plaintiff learned of the FDA's final refusal around the same time, which is the first time either Party became aware of Radiant Customs's error in responding to the second hold notice. Dkt. No. 94 at 9–10.

Defendants' arguments fail for several reasons. When a party has an *affirmative* duty to disclose, it may still be liable for its silence even in the absence of a specific inquiry. *See Crisman*, 931 P.2d at 167. Here, as in *Crisman*, Radiant Customs's affirmative disclosure duty arose, at least in part, from its undisputed fiduciary relationship with Plaintiff, which imposes "a duty to act in the utmost good faith, to fully disclose **all facts** relating to [Plaintiff's] interest in and [Radiant Customs] actions involving" the customs brokerage services being provided. *See id.* (emphasis added). Similarly, as a licensed customs broker, the scope of Radiant Customs's disclosure duty under federal regulations affirmatively prohibits it from "withhold[ing] information from a client relative to any customs business it conducts on behalf of a client who is entitled to the information." 19 CFR § 111.39(a). This is an affirmative duty separate from the subsequent duty of candor imposed by the same regulatory provision. *Id.* ("The broker must not knowingly impart to a client false information relative to any customs business."). Thus, Defendants' argument that it never knowingly provided false information does not relieve it of its separate affirmative disclosure duty.

Defendants' claim that Radiant Customs responded to the relevant hold notice the same as it responded to an earlier hold notice (Dkt. No. 94 at 9) is directly contradicted by their own statement of facts. By Defendants' own admissions, when Radiant Customs received the earlier hold notice it "notified JAS Supply of the issue and JAS Supply provided Radiant Customs with the requested documentation on the same day. Radiant Customs then provided that information

to the FDA via the [ITACS] and the shipment was released." Dkt. No. 94 at 3. In other words, Radiant Customs met its fiduciary and regulatory duties of care and disclosure regarding that earlier hold notice. In contrast, the undisputed facts establish that in response to the subsequent hold notice—which is the activity relevant to Plaintiff's claims—Radiant Customs never notified Plaintiff about the hold and uploaded incorrect information without Plaintiff's knowledge, depriving Plaintiff of an opportunity to confirm its accuracy. *Id.* In other words, Radiant Customs failed to meet its affirmative duties of care and disclosure in relation to the subsequent hold notice.

The fact that both Parties learned of the FDA's refusal at, or around, the same time does not protect Radiant Customs from liability. The undisputed facts indicate that the appeal requirements and deadlines were delineated in the hold notice, which had already passed before the Notice of Refusal was even issued. *See* Dkt. No. 95-1 at 18–19. Defendants assert that "Radiant Customs discovered that there was an issue with the documents" only because it received the Notice of Refusal. Dkt. No. 94 at 9. Radiant Customs's allegedly innocent ignorance about its later-admitted error in responding to the hold notice does not absolve it of its affirmative duties to disclose its receipt of that hold notice and to affirmatively disclose the responsive actions it took on Plaintiff's behalf. Had Radiant Customs made these disclosures, it is likely that the error would have been caught and corrected in time, or that Plaintiff would have noticed that the hold was not released and instigated further action prior to the products being refused.

Finally, as previously discussed, there is no evidence that Plaintiff actually received the hold notice that was allegedly contemporaneously mailed by the FDA, and regardless, the unbroken chain of causation leading to the containers being refused occurred, at least in part,

because Radiant Customs failed to make the required affirmative disclosures. *See supra*

Section IV.B.1.

The Court therefore GRANTS Plaintiff's motion for partial summary judgment as to

liability on its fraudulent concealment claim against Radiant Customs.

### V.     CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for

partial summary judgment (Dkt. No. 66), GRANTS Plaintiff's motion for partial summary

judgment (Dkt. No. 72), and GRANTS IN PART and DENIES IN PART Plaintiff's counter-motion for

partial summary judgment in opposition to Defendants' motion for partial summary judgment

(Dkt. No. 74). The Court further STRIKES Defendants' motion for partial summary judgment on

Plaintiff's CPA claim (Dkt. No. 71) and all related briefing (Dkt. Nos. 77-78, 85–86).

Pursuant to the above, the Court FINDS and ORDERS as follows:

1.  Plaintiff's fraudulent concealment and breach of fiduciary duty claims against
    Radiant Global are DISMISSED;

2.  Plaintiff's negligence claim against Radiant Customs is DISMISSED as barred by
    the independent duty doctrine;

3.  Radiant Customs IS LIABLE to Plaintiff for breach of fiduciary duty and fraudulent
    concealment, but Plaintiff's recovery of damages on these claims IS LIMITED by
    application of the contractual limitation of liability clause; and

4.  the limitation of liability clause IS ENFORCEABLE as to any remaining tort or
    contract claims against Radiant Customs but IS UNENFORCEABLE as to any
    remaining claims against Radiant Global.

Dated this 15th day of November 2023.

Tana Lin
United States District Judge